**Elmer E. MILLS and Louis Susman, Plaintiffs-Appellees and Appellants,**

**v.**

**The ELECTRIC AUTOLITE COMPANY; Mergenthaler Linotype Company; American Mfg. Co., Inc., Defendants-Appellants and Appellees.**

**Nos. 16613, 16614.**

United States Court of Appeals Seventh Circuit.

Nov. 25, 1968.

Arnold I. Shure, Robert A. Sprecher, Harry B. Reese, Frank J. McGarr, Chicago, Ill., for Mills-Susman.

Albert E. Jenner, Jr., Samuel W. Block, Jerold S. Solovy, Howard R. Barron, John G. Stifler, Ronald J. Clark, Chicago, Ill., Raymond, Mayer, Jenner & Block, Chicago, Ill., of counsel, for Electric Autolite Co.

Before SWYGERT, FAIRCHILD and KERNER, Circuit Judges.

FAIRCHILD, Circuit Judge.

This is an appeal from an interlocutory summary judgment, determining liability alone, under one of three counts of a complaint. The question of appropriate relief was reserved. The judgment was entered September 26, 1967, an opinion, 281 F.Supp. 826, and findings of fact and conclusions of law, having been filed the same day. Defendants obtained leave to appeal under 28 U.S.C. sec. 1292(b). Plaintiffs, with similar leave, cross appealed from an order entered September 28, 1967 deleting one of the conclusions of law.

*The posture of the action.*

Plaintiffs attacked a corporate merger whereby The Electric Autolite Company (an Ohio corporation) was to be merged with and into Mergenthaler Linotype Company. The name of the surviving corporation was changed to Eltra Corporation. The merger was approved at a stockholders' meeting of Autolite on June 27, 1963 and has been treated as effective.

Plaintiffs held stock in Autolite. They assert that this is a derivative action on behalf of Autolite, and also that it is a class action on behalf of themselves and all other minority stockholders.

Plaintiffs filed their original complaint June 26, 1963, the day before the meeting. Their amended complaint, filed February 4, 1964, set out three counts. In each they sought a declaration that the proxies solicited by management were void, orders setting aside the merger and causing the return of assets to Autolite, and an accounting to Autolite for damages. No application was made for a restraining order or temporary injunction to prevent use of the proxies or to delay consummation of the merger.

Count II predicated jurisdiction on sec. 27 of the securities exchange act of 1934.[1] It alleged that the proxy statement sent out by management violated sec. 14(a) of the 1934 act[2] and rule 14a–9, issued under the act,[3] by misrepresentation and nondisclosure; that the proxies obtained were void, and that accordingly the merger had failed to receive valid votes representing the required two-thirds of the Autolite shares.

On November 15, 1965, after a motion by plaintiffs for summary judgment as to count II, the district court filed a memorandum concluding as a matter of law the failure to disclose certain facts was a material omission. The court indicated doubt as to the consequences which must flow from that conclusion. On November 29, the court filed a memorandum opinion and order concluding that there should be a reference to a master under Rule 53(b), F.R.Civ.P. On February 14, 1966, the court filed a memorandum concluding that it would be necessary for the court to determine whether there was a causal connection between the violation of the disclosure requirements and the alleged injury to the plaintiffs before a master should look into appropriate remedial action.

1. 15 U.S.C. sec. 78aa.

2. 15 U.S.C. sec. 78n(a).

3. 17 C.F.R. 240. 14a–9. "(a) No solicitation subject to this regulation shall be made by means of any proxy statement, notice of meetings or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading."

At the time of entering the interlocutory summary judgment appealed from, the court found again that the proxy statement was false and misleading as a result of certain statements and omissions, found that the proxy statement was a cause of the merger, and directed that the master, previously designated, should proceed.

 Plaintiffs argue that our present review is limited to the finding of causation, suggesting that the district court's 1965 order or ruling finding a violation of the disclosure rule has passed beyond review. We disagree. Just as defendants could have waited until final judgment and then have attacked on appeal all intermediate orders which involve the merits and necessarily affect the final judgment, so now, upon appeal from the interlocutory judgment they may have review of all prior orders which bear the same relationship to the interlocutory judgment.

 Plaintiffs also contend we can not at this time review the order of reference with respect to the determination of relief. They apparently consider that the reference was made November 29, 1965, though suspended thereafter. Although it is true that the judgment entered September 26, 1967 does not expressly direct a reference, the accompanying memorandum makes it plain that the directions given November 29, 1965 were then revived. We consider that the appropriateness of a reference is also before us.

*The deficiency in the proxy statement.*

Before the merger, Mergenthaler owned 54% of the shares of Autolite outstanding. 46% of the shares were held by 8,987 other shareholders. Under the terms of the merger, the shares owned by Mergenthaler would be canceled. The shares held by others would become preferred stock of Eltra (Mergenthaler), at the ratio of 1.88 shares of preferred stock for each share of Autolite stock. The preferred stock had a par value of $34.50 per share, and would be convertible into common stock of Eltra, at the shareholder's option, share for share for two years, and at less favorable rates thereafter until the end of five years.

Thus in substance, Mergenthaler was offering that if a sufficient number of the minority shareholders of Autolite would vote to approve the merger, all minority common stock interests in Autolite would be transformed into preferred stock interests in the merged companies, with the right of each shareholder, for a time, to transform his preferred stock into Eltra common.

Because Mergenthaler owned 54% of the Autolite shares, it needed the votes of an additional 13% of the shares in order to have the merger approved by a two-thirds vote. The Autolite management solicited proxies, using the proxy statement which is under attack. The merger was approved by votes representing 82% of all the shares, 28% being owned by shareholders other than Mergenthaler.

Although the proxy statement was, in form, addressed to all shareholders, it was, in realistic terms, intended for the minority shareholders. The board of directors recommended a favorable vote, giving emphasis to the recommendation by setting it in larger and bolder type. The question considered by the district court, and decided adversely to defendants as a matter of law, was whether the relationship of the members of the Autolite board to Mergenthaler (and to a third corporation, defendant American Manufacturing Company, Inc.), was sufficiently disclosed.

The key finding was as follows:

"8. The proxy statement was false and misleading, at the time and in the light of the circumstances under which it was made, in its statement of material facts and in its omission to state material facts necessary to make the statements therein not false or misleading, in its misrepresentation of the supposed independence of the Auto-Lite board and in its failure to inform the shareholders of the interrelationships between the Auto-Lite board and the defendants Mergenthaler and

American. These misleading statements and omissions were material in the sense that an average prudent investor ought to be informed of those relationships, in order to bring his own informed and independent judgment to the question of how much weight to give to the Auto-Lite board's endorsement of the merger proposal."

The proxy statement, including financial statements and appendices, was a pamphlet of 108 pages. Statements on pages 2 and 3 indicated that the Autolite board endorsed the merger.

One of these stands out in type which is blacker and larger than the surrounding text. It says: "The Board of Directors has carefully considered and approved the terms of the merger and recommends that the shareholders vote to approve the plan of merger." Elsewhere on page 2 it is said in body type, under "Reasons for Merger": "After a thorough review of all factors involved, both Boards of Directors are of the opinion that the merger would be mutually beneficial to the Constituent Corporations and their respective shareholders." On page 3, under "Basis of Merger", there appears in body type: "The Board of Directors of Electric Autolite believes the plan of merger to be fair and equitable to the shareholders of Electric Autolite; the Board of Directors of Mergenthaler believes the plan of merger to be fair and equitable to the stockholders of Mergenthaler."

Several facts pertinent to the relationship between the eleven members of the Autolite board and Mergenthaler do appear in portions of the proxy statement.

On page 23, it is said that Mergenthaler owns 54% of the outstanding shares, and reference is also made to this fact on page 2, in a statement disclosing Mergenthaler's intention to vote its shares in favor of the merger. On page 23 it appears that four of the eleven Autolite directors are directors of Mergenthaler. One of the four, Mr. Wattles, is chairman of the board of Mergenthaler and chairman of the executive committee of Autolite. Another of the four is an officer of Mergenthaler, receiving substantial remuneration, and will continue to be an officer. Two other Autolite directors are officers of Autolite, receiving substantial remuneration, and will be officers of Eltra. On page 21, it appears that the Eltra board will be expanded to include the seven Autolite directors not on the Mergenthaler board before the merger.

Page 23 also discloses that Mr. Wattles is president and a director of American and owns about one-third of American's stock. American and Wattles together own about one-third of the pre-merger Mergenthaler stock. Three other directors of Mergenthaler are also officers, directors, and shareholders of American.

Thus the proxy statement contains information which would indicate to those aware of corporate mechanism that Mergenthaler had the power to select a majority, if not all, the members of the board, may well have exercised it, and that a minority, at least, were directors of both. Although one reference to Mergenthaler's ownership of 54% of the stock appears on page 2, where the board's recommendation is stated in boldface type, this fact is not given the same emphasis as the recommendation and the other information indicating a close relationship between some of the directors and Mergenthaler appears many pages later.

Plaintiffs produced transcripts of testimony and copies of other papers in a proceeding before the SEC, brought by American, and terminated two months before the solicitation of the proxies. American had sought and obtained an exemption from provisions of the investment company act of 1940.[4]

Testimony of Mr. Wattles tended to show that the management of American selected directors for Mergenthaler and Autolite, and that Autolite was under the control of American. A statement

---

4. 15 U.S.C. sec. 80a–1, et seq.

was submitted to the SEC, dated November 1, 1962 by Mr. Pulleyn, who is a director of all three companies, stating it had been prepared in cooperation with Mr. Wattles. A portion of it is as follows:

"American desires to state for the record that it continues to control the operations of Mergenthaler and Electric Autolite. The nominees for directors of Mergenthaler are selected by American in consultation with the operating management of Mergenthaler and there is only one director of Mergenthaler (to wit: William J. Flather) who has not been placed on the Board by American. He continues to serve at the pleasure of American. The directors of Electric Autolite are similarly selected. At the present time the Board of Directors of Electric Autolite consists of eleven members. Of these Messrs. Davies, Hiller, Keller, McAlpin, Perkins, Pulleyn and Wattles were and are nominees of Mergenthaler. The other four directors, to wit: Falvey, Harding, Hopkins and Jones were directors prior to the interest of Mergenthaler. These four individuals are kept as directors because in view of their understanding of the affairs of Electric Autolite and their general positions in the community, it is considered in the best interests of Mergenthaler that they continue at this time as directors."

Defendants presented affidavits of every director of Autolite, and each stated that it was his best independent business judgment that the proposed merger would be beneficial to all the shareholders and that no pressure had been exerted in the matter. There was no denial, however, of the facts shown by plaintiffs with respect to selection of the directors by Mergenthaler nor the claim of control of operation generally.

Defendants also presented evidentiary material tending to show that the terms of merger were fair and equitable.

But these two propositions do not demonstrate that there is an issue for trial as to the legal adequacy of the proxy statement. For even if both were established as matters of fact, they would not fully meet the point which is presented.

In a real sense, the merger was a bargain between Mergenthaler and the minority shareholders in Autolite. The Autolite board, selected by their adversary, presumed to advise the minority shareholders to approve the merger. The crucial question at this point, with respect to the policy of the 1934 act, is not whether the advice was good, but whether the minority shareholders were sufficiently alerted to the board's relationship to their adversary to be on their guard.

It is true that approval of the merger by the board was an essential step in effecting the merger. Had the proxy statement simply reported approval, without emphasis and along with the other facts, we might have a different situation. But the Autolite management was not content with a bland statement that the board had approved. The language used in a communication which was really intended for the minority shareholders implied that the board was giving disinterested advice. Statements appearing on pages 2 and 3, one of them emphasized by the use of larger and heavier type, doubtless got the attention of some shareholders who did not read pages 21 and 23.[5] We think that under the circumstances the board was not free to state its recommendation and opinion favoring the merger without giving similar emphasis to the relationship between the directors and the other party to the bargain.

Statements in S. E. C. v. Capital Gains Research Bureau, Inc.,[6] offer guidance

---

5. "The language used and the position and emphasis given to each statement, * * * may be considered in determining whether there has been a fair and candid disclosure of a material fact.

* * *" Richland v. Crandall (S.D. N.Y.1967), 262 F.Supp. 538, 554.

6. (1963), 375 U.S. 180, 201, 84 S.Ct. 275, 11 L.Ed.2d 237.

here though decided under the investment advisers act of 1940.[7] The Supreme Court said: "The statute, in recognition of the adviser's fiduciary relationship to his clients, requires that his advice be disinterested. To insure this it empowers the courts to require disclosure of material facts. It misconceives the purpose of the statute to confine its application to 'dishonest' as opposed to 'honest' motives. * * * The high standards of business morality exacted by our laws regulating the securities industry do not permit an investment adviser to trade on the market effect of his own recommendations without fully and fairly revealing his personal interests in these recommendations to his clients." The Court cited with approval a 1936 district court holding under the '33 act[8] "that suppression of information material to an evaluation of the disinterestedness of investment advice 'operated as a deceit on purchasers.' 15 F.Supp., at 317."

█ We conclude, in agreement with the district court, that as a matter of law the proxy statement failed, in connection with the advice tendered by the board, adequately to bring out the relationship between the board members and Mergenthaler. This, in terms of the rule, was an omission of a material fact necessary in order to make the statements therein not misleading. It follows that mailing the proxy statement was unlawful under 15 U.S.C. sec. 78n(a) (sec. 14(a)). We have no question but that, if an injunction had been timely sought in advance of the shareholders' meeting for which the proxies were solicited, corrective measures would have been appropriate.

*The causal relationship and appropriate relief.*

In this case, although the action was filed one day before the merger, the matter did not really come before the court until too late for preventive action. The court must now determine in retrospect whether the unlawful act caused some inequity or damage which the court should relieve or redress.

It is clear that the merger required favorable votes representing at least two-thirds of the Autolite shares, and that in order to count a two-thirds vote, one must include votes which were cast by authority of proxies obtained by the challenged solicitation. The district court concluded that since this is so, the proxy statement was a cause of the merger and defendants' "liability" followed as a matter of law. Relief was left for further consideration after hearings before a special master and a report thereon.

Plaintiffs held, between them, only $5/100$ of 1% of the Autolite shares, and voted against the merger, as did other holders of about 4% of the shares. Nothing in the record indicates dissatisfaction with the merger on the part of any shareholders who voted for it (the holders of 28% in addition to Mergenthaler).

Plaintiffs appear to contend that Autolite had a right to a separate existence which the court must vindicate against unlawful interference, and claim their own rights to be shareholders of Autolite, unaffected by votes at a meeting where the information supplied to the electorate did not meet the standards of the 1934 act. They seem to argue that the proxies were void because of the deficiency in the proxy statement, and that the merger is void because it did not receive enough valid votes.[9]

█ We think however that there is an issue for trial with respect to the causal relationship between the deficiency in the proxy statement and the merger. It follows that summary judgment was improper with respect to this issue.

Defendants presented evidentiary material tending to show that the merger has merit and the terms were in fact fair and equitable to the minority share-

---

7. 15 U.S.C. sec. 80b–1, et seq.

8. Securities & Exchange Commission v. Torr (S.D.N.Y.1936), 15 F.Supp. 315.

9. 15 U.S.C. sec. 78cc.

holders; that before the proxy statement was issued research consultants made an independent study and reported favorably. This report was referred to in the proxy statement. Although we have concluded that this material did not raise an issue for trial as to whether there was a material omission, we think it does bear on the cause question.

■ Plaintiffs and the district court deem liability established because some of the required votes depended for validity on proxies secured by the unlawful proxy statement. We think the more exact question is whether the misleading statement and omission caused the submission of sufficient proxies.[10]

■ The material offered by defendants on the merits of the terms of merger suggests that it may be possible for them to satisfy the court, by a preponderance of probabilities, that the merger would have received a sufficient vote even if the proxy statement had not been misleading in the respect found.[11] It seems fair to place the burden of persuasion on this issue on defendants, who are responsible for the violation, but if they are able to carry the burden, there would be no sound basis for disruption of the merger or other relief. We do not consider that the policy of the '34 act requires the court to unscramble a corporate transaction merely because a violation occurred.[12]

Therefore we conclude that there is an issue for trial as to the causal relationship. The interlocutory summary judgment should not have been entered, although we agree with the district court as a matter of law that in the light of the board's statements recommending and giving opinions favorable to the merger the failure to give similar emphasis to the relationship with Mergenthaler was the omission of a material fact necessary to make the laudatory statements not misleading.

The reference to a master appears to have embraced, without guidelines or restrictions by the court, the entire issue as to relief to be granted. The present order of reference will fall along with the reversal of the judgment, and it is unnecessary to do more than to note that there is doubt whether the reference of so broad an issue was justified under Rule 53(b), F.R.Civ.P.

The district court, on September 28, 1967, struck out a conclusion that the merger was void. Had this conclusion been left standing, it would have fallen along with reversal of the judgment. We affirm the September 28 order on that basis, without considering the merits of the conclusion of voidness if the judgment had been affirmed.

The judgment entered September 26, 1967 is reversed and the cause remanded for further proceedings. The order entered September 28, 1967 and appealed from by plaintiffs is affirmed.

10. In common law fraud terms, the corresponding question would be whether the injured party relied on the misrepresentation. Reliance by thousands of individuals, as here, can scarcely be inquired into. In J. I. Case Co. v. Borak (1963), 377 U.S. 426, 431, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423, the issue is referred to as "the causal relationship of the proxy material and the merger." The complaining stockholder pleaded in that case that the merger would not have been approved "but for" the false and misleading statements in the proxy solicitation material.

11. See Union Pacific R. Co. v. Chicago and Northwestern Ry. Co. (N.D.Ill.1964),

226 F.Supp. 400, 411, putting the matter in terms of probability.

12. See, however, Laurenzano v. Einbender (E.D.N.Y.1966), 264 F.Supp. 356, 360. The test there stated for denying motion to dismiss for want of jurisdiction is that the accused proxy material "have a transactional function and not merely be randomly present in the context of the transaction with respect to which a remedy is sought." The decision acknowledges, however, that once jurisdiction is accepted, "Much must depend on the facts."