**Harold KAPLAN, Plaintiff,**

v.

**VORNADO, INC., Defendant.**

No. 69 C 2692.

United States District Court,
N. D. Illinois, E. D.

July 13, 1971.

Arnold J. Shure, Chicago, Ill., for plaintiff.

Bernard J. Nussbaum, Robert J. Stracks, Linda J. Silberman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

NAPOLI, District Judge.

This is a securities action involving an alleged violation of section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 of the Securities and Exchange Commission, 17 C.F.R. 240.10b–5. Jurisdiction is predicated upon section 27 of the '34 Act, 15 U.S.C. § 78aa. The case is presently before the court on motions for summary judgment of both plaintiff and defendant. Each party asserts the lack of a genuine issue of material fact and each contends that it is entitled to judgment as a matter of law. The court agrees that there is no issue of material fact.

Plaintiff is the owner of a small business who previous to the purchase in question, had invested occasionally in the stock market. His previous purchases were of common stock. Defendant issued on March 1, 1962, through a trustee (at which time defendant was a Kansas corporation) $5,242,400 in five per cent convertible subordinated debentures. Plaintiff and, as joint tenants, his wife who is not a party herein purchased two debentures in $1000 denominations during April of 1967.

Being advised that these debentures were a "good investment," they were purchased on the open market through his broker. At no time did plaintiff see a prospectus or the trust indenture under which the debentures were issued nor did he investigate any aspect of the debentures, their ratings or the defendant company. Upon receipt following purchase, plaintiff examined the debentures but not thoroughly. He knew at that time that the debentures were convertible but was not positive as to the meaning of "convertible" and he did not understand the meaning of the term "redeemable" or "callable". The debentures were redeemable at the option of the defendant upon at least thirty days published notice and the payment of a premium.

By late 1968, the holders of approximately $4 million worth of the debentures had elected to and did convert them into common stock. Then, on October 30, 1968, and again on November 7, notices were published in the *New York Times* announcing that defendant was redeeming the debentures as of November 29, 1968, and that the holder's right of conversion would be terminated by said redemption at 3 P.M. on November 29, 1968. By that date, the holders of $5,086,600. of the debentures (including the approximately $4 million worth previously converted) had converted at favorable market prices, leaving unredeemed debentures worth $155,800. Plaintiff was not aware of this notice and did not convert his debentures.

In addition to publication in the *Times*, notice was mailed to all holders who had registered with the trustee. All holders could have so registered; plaintiff held his debentures in nonregistered bearer form. Consequently, he did not receive mailed notice. Also, resulting from defendant's press release, stories of defendant's announcement to redeem were published on October 29, 1968, in the *Wall Street Journal, Womens Wear Daily, Daily News Record, Homes Furnishings Daily* and the Reuters and Dow-Jones wire services. The essential facts of the defendant's redemption and of the termination of the holder's conversion rights were printed in these news items. Plaintiff did not see these stories.

The form of the debenture is that commonly used for this type of security. On the upper third of the one page form, there appeared the name of the company, the state of incorporation, the denomination and number of the individual debenture, the recital to pay the bearer or registered holder, and the following title:

5% Convertible Subordinated Debenture Due March 1, 1982.

The remainder of the form consisted of fourteen paragraphs of smaller print,

**214**

without headings, and a table of redemption prices. In the fourth paragraph the details of the holder's right to convert were specified. The fifth paragraph stated, "The debentures are subject to redemption on at least thirty days published notice at the option of the company at any time prior to maturity. . ."

Plaintiff's claims of violation of section 10(b) and rule 10b–5 are essentially two: first, the form of the debenture itself is attacked as deceptive and misleading in that its formal title printed in large, prominent letters contains the word "convertible" but fails to mention the defendant's right to redeem, which is included in the paragraphs of small print; and second, that for various reasons, the notice of redemption was defective and, hence, ineffective to terminate plaintiff's right of conversion.

Plaintiff argues that the right of conversion is a substantive right and an important inducement for the purchase of such a security. Mueller v. Howard Aircraft Corp., 329 Ill.App. 570, 70 N.E. 2d 203 (1946) ("Plaintiff's option to convert his debenture . . . represented a substantial right, as did defendant's option to redeem said debenture"). This is undoubtedly true, for the right to convert at a fixed price into common stock enables the company to pay a lower interest rate than it otherwise would be able to. Note, Convertible Securities: Holder Who Fails to Convert Before Expiration Of the Conversion Period, 54 Cornell Law Review 271, 273 (1969) (hereinafter "Note, Convertible Securities"). Plaintiff then reasons that this substantial right was deprived by the title of the debenture which is misleading in omitting to indicate that the conversion right could be terminated by a redemption. Hence, plaintiff would have the defendant clearly indicate in equivalent type and emphasis as the title the company's right of redemption. Supporting this contention is his view that investors reasonably expect their conversion right to continue until the maturity date and are unaware that such right may be terminated by the company.

Finally, plaintiff believes that the debenture is an adhesion contract and should therefore be construed in light of what an investor might reasonably expect.

The seriousness of this situation is indicated by the New York Stock Exchange, Company Manual, § A12(1), "Securities Having Limited Conversion Rights":

In the case of a security having a right of conversion which is not exercisable through the entire life of the security, the word "convertible" shall not be used as part of the formal title of the security. Instead, attention should be called to the conversion rights by means of a sub-heading, such as "Convertible on or before. . . ." or "Convertible on or after. . . ."

However, a debenture of the kind here may be exercisable through its entire life unless called and thus differs from the above-mentioned one which is limited to a time less than its entire life. The predominant view is that the above quoted rule applies only to the latter. Note, Convertible Securities, supra, and letter dated November 13, 1970, of Phillip C. West, Vice President of the New York Stock Exchange.

In opposing plaintiff's motion and in support of their own motion for summary judgment, defendant asserts that plaintiff, having admitted that he did not thoroughly read the debenture or the provisions contained therein and that he did not know what the terms "redemption" or "callable" meant, could not have relied upon nor been deceived or misled by the wording of the debenture. Hence, it is argued, the causative factor of plaintiff's loss was not any alleged misrepresentation or deception of defendant, but was plaintiff's carelessness or negligence.

In a case involving proxy statements under section 14(a) of the Act and Rule 14a–9, the Supreme Court in Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 said:

Where the misstatement or omission in a proxy statement has been shown

to be "material," as it was found to be here, that determination itself indubitably embodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to vote. . . . There is no need to supplement this requirement . . . with a requirement of proof of whether the defect actually had a decisive effect, on the voting. *Where there has been a finding of materiality, a shareholder has made a sufficient showing of causal relationship between the violation and the injury for which he seeks redress* if, as here, he proves that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction. 396 U.S., at 384–385, 90 S.Ct., at 621 (Emphasis Added).

This principle is undoubtedly broad enough to also be applied to a 10b–5 action. Therefore, if the debenture's form constitutes a misleading statement or omission and that statement or omission is found to be material, then under *Mills* no further showing of a causal relationship need be made.

■ ■ After careful consideration of arguments of counsel and their respective memoranda of law, the court is convinced that the debenture itself was not misleading or deceptive. A reasonable man, or, as it has been called, a reasonable investor standard is to be used in determining whether the contested representation is misleading or deceptive. The court in City National Bank of Fort Smith, Arkansas v. Vanderboom, 422 F. 2d 221 (8th Cir. 1970), rehearing denied, stated:

It should be noted from the outset that this "reasonable investor" test is an objective standard. Whether an investor did in fact rely upon a misrepresentation is immaterial for the purpose of determining statutory coverage, . . . . 422 F.2d at 230–231.

The reasonable investor test itself was described as follows:

With regard to misrepresentations, the question is *whether a reasonable investor,* in light of the facts existing at the time of the misrepresentation and *in the exercise of due care, would have been entitled to rely upon the misrepresentation.* With regard to nondisclosures, the issue becomes *whether a reasonable investor,* in light of the facts existing at the time of the nondisclosure and *in the exercise of due care, would have been entitled to receive full disclosure from the party charged and would have acted differently had the alleged nondisclosure not occurred.* 422 F.2d, at 230 (Emphasis Added).

■ ■ Based upon these principles, the court is of the opinion that plaintiff did not act as a reasonable investor, did not exercise due care and would not have acted differently had the alleged nondisclosure not occurred. Plaintiff admits that he knew nothing about debentures and that he purchased the two in question only upon the advice of a broker who told him that they were a good investment. He took no steps to investigate the debentures or the issuing company, defendant herein, and did not inquire of his broker about the terms of the debentures. While he had a vague understanding of the meaning of the term "convertible", he did not know the meaning of "redeemable" or "callable" and he did not seek further information concerning these terms. Nor did he inquire of their duration or his rights from the defendant, financial sources or any one of his stock brokers. It does not seem to be unreasonable to expect an investor, who is unfamiliar with debentures, to at least read the terms on the face of the debenture in more detail than the general information at the top of the debenture. Small printing may always be something of a deterrence to its being read but an investor cannot reasonably rest upon his lack of knowledge and fail either to read the debenture or seek information concerning its important terms from a knowledgeable source. It was due to these failures that plaintiff was caught

unaware when the defendant redeemed the debenture. Lack of knowledge combined with a refusal to exercise due care in protecting one's interest does not state a claim for relief even under 10b–5. Under these circumstances, it is most probable that had the alleged nondisclosure not occurred, plaintiff would not have acted in a different manner.

If plaintiff had taken any of these steps, he would have been aware of the redemption rights of defendant and might have avoided his loss. This case is distinguishable from the decision of the Court of Appeals for the Seventh Circuit in the *Mills* case, 403 F.2d 429 (1968) reversed on other grounds 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593. As already indicated, *Mills* involved a 107 page proxy statement recommending to the shareholders of the defendant corporation a proposed plan of merger with another corporation. On pages 2 and 3, the board of directors printed its statement approving the plan in large and prominent type. No indication was given until far later in the proxy statement that the board recommending approval was controlled by the other corporation. The latter information was not given the same emphasis as the statement approving the plan and undoubtedly, the Court of Appeals considered the difference in type to constitute a factor making the proxy statement misleading. See, Richland v. Crandall, 262 F.Supp. 538, 554 (S.D.N.Y.1967). This does not mean, however, that everytime a difference in type is utilized when dealing with a material fact that ipso facto, a misleading or deceptive statement has been made. For instance, in *Mills* the material fact was one which even a knowledgeable investor may not have been aware of and there was no reasonable explanation for distinguishing between the two portions of text of the proxy statement. In the case at bar, a reasonable investor would have at least made inquiries concerning the terms of the debentures even if he didn't read all of the small print and didn't know what the terms of the debenture were, and there was a good reason for the differences of the type. One portion was the title of the debenture while the remainder consisted of the entire body of terms governing the relationship between the parties (except for the provisions of the Indenture Agreement which were incorporated by reference). It is always possible to speculate why the defendant could not have squeezed one more word into the title and have made it read "5% Convertible Redeemable Subordinated Debentures". The court can only say that that omission was not unreasonable for the title, as a summary, could not comprise the whole of the terms of the debenture and, in fact, such a title may be attacked as confusing and misleading, especially to the unknowledgeable investor.

Plaintiff also attacks the notice of redemption on three grounds. First, plaintiff interprets the words "at least thirty days' published notice" to mean notice published on each of thirty consecutive days. Secondly, it is claimed that thirty full days of notice were not given as the act to be performed was done on the last, or thirtieth day. And, thirdly, notice was published only in a New York paper while many holders were apparently located in areas outside of the New York metropolitan area.

In beginning it may be noted that the holders of these debentures had the option of registering with the trustee and receiving personal notice. Plaintiff also failed to take this step. This practice of registration has been suggested as a solution to the problem of security holders not receiving notice by publication. Note, Convertible Securities, supra. As far as publishing in the N. Y. Times, plaintiff made every reasonable effort to publicize its decision as evidenced by the number of papers which carried the story. It has always been recognized that notice by publication will not reach all of its intended recipients but plaintiff could have avoided this result by registering.

Turning to plaintiff's first two objections, plaintiff and defendant have cited numerous cases to the court dealing

with notice and the computation of time, most of which were decided far before the promulgation of Rule 10b–5 and were cases interpreting state statutes or instruments. None of these cases consider what form of notice is required in this type of case. The court is of the opinion that, when considered in conjunction with plaintiff's right to register, the notice published by defendant was reasonable and did not have to include notice published on thirty consecutive days. Nor was the notice voided when the act was performed on the thirtieth day at 3 P.M. The court is in agreement with the cases cited by defendant that the act to be done may be performed on the last day of the notice period.

In conclusion, it is the decision of this court that the title of the debenture was not misleading and it need not have included all of the terms of the debentures, and the notice of the redemption was not defective or void. Further the court finds that there exists no genuine issues of a material fact and that defendant is entitled to judgment as a matter of law. Accordingly, summary judgment is entered on behalf of defendant and against plaintiff. This action is dismissed.