**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

**HARBOR INSURANCE COMPANY and Allstate Insurance Company, Plaintiffs,**

v.

**CONTINENTAL ILLINOIS CORPORATION, et al., Defendants.**

Nos. 85 C 7080, 85 C 7081.

United States District Court, N.D. Illinois, E.D.

Jan. 12, 1987.

See also, 113 F.R.D. 637.

James G. Hiering, Dennis C. Waldon, Jeffrey I. Berkowitz, A. Benjamin Goldgar, Keck, Mahin & Cate, Chicago, Ill., for plaintiff.

Roger W. Barrett, Franklin P. Auwarter, Michele Odorizzi, Mayer Brown & Platt, Gary L. Prior, Kevin T. Keating, McDermott, Will & Emery, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

In the latest (though surely far from the last) chapter in this sprawling litigation,[1] directors and officers ("D & O") insurers Harbor Insurance Company, Allstate Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pa. (collectively "Insurers") seek to file a new counterclaim (sic) against a clutch of the numerous defendants Insurers have sued in these cases. Though the entire counterclaim is under attack in a briefing schedule still in process, one of its claims is so patently wanting in merit it is clearly ripe for dismissal now.

Insurers claim that they are entitled to indemnification from their insureds because of misrepresentations made to Insurers in the course of procurement of the D & O policies they then issued to Continental Illinois Corporation ("Continental"). In part that claim is sought to be advanced on a "negligent misrepresentation" theory. Promptly after receiving the new counterclaim, this Court asked Insurers to explain how such a negligent misrepresentation claim can be asserted in good conscience, given the narrow scope that well-established Illinois law (which controls here) gives to that cause of action.[2]

Insurers' counsel have responded in a totally untenable way, in which they seek to bend the clear Illinois precedents in this area out of shape. According to counsel, so long as any negligently-uttered misrepresentation provides someone else with information in the course of the speaker's or writer's business, that creates actionable negligent misrepresentation.

Any such theory would of course make negligent misrepresentation a virtually universal tort, instead of the narrowly restricted one the law has recognized.[3] But more to the point here, it flies in the face of well-established and unvarying Illinois law. Among the cases this Court's December 11 memorandum order cited was *Black, Jackson and Simmons Insurance Brokerage,*

---

1. This is the seventeenth opinion this Court has been compelled to write since these cases were assigned to its calendar after a series of recusals by other judges of this District Court.

2. This Court's December 11, 1986 memorandum order is attached to this opinion.

3. After all, the tort of *fraudulent* misrepresentation always requires, among its elements, the making of a representation (by definition the provision of information) on which the recipient relies to his, her or its detriment. In the legal universe Insurers' counsel seek to fashion, any time that the party making the representation is engaged in business, the need to prove fraudulent intent would drop out of the case entirely—negligence would be enough. No one would have to allege or prove such intent except in the few cases where the misrepresentation was made in a purely personal, non-business context and the victim could still prove resulting damage.

*Inc. v. IBM Corp.*, 109 Ill.App.3d 132, 64 Ill.Dec. 730, 440 N.E.2d 282 (1st Dist.1982), which cited with approval this Court's earlier opinion on the subject in *National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147 (N.D.Ill.1981) and which left no doubt whatever on the nature and limited scope of the tort (109 Ill.App.3d at 135–36, 64 Ill.Dec. at 732, 440 N.E.2d at 284):

> First, the defendant must supply the information in the course of his business and second, the information must be supplied for the guidance of others in their business transactions. While section 552 of the second Restatement of Torts says that liability arises when one "in the course of his business" supplies false information for the guidance of others, *Moorman* [*Manufacturing Co. v. National Tank Co.*, 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982)] and *Penrod* [*v. Merrill Lynch, Pierce, Fenner & Smith*, 68 Ill.App.3d 75, 24 Ill.Dec. 646, 385 N.E.2d 376 (3d Dist.1979)] have construed that section to mean that the defendant must be in the business of supplying information.

And just within the past 60 days that same concept has been reaffirmed by the Illinois Supreme Court in *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill.2d 146, 153, 104 Ill.Dec. 689, 692, 503 N.E.2d 246, 249 (1986), not only by quoting *Moorman* but by citing the seminal decision in *Rozny v. Marnul*, 43 Ill.2d 54, 250 N.E.2d 656 (1969)—one of the very cases Insurers' attempted justification for the counterclaim seeks to distort to Insurers' own ends.

There is no way in which Continental (or its officials charged with the alleged misrepresentations) can conceivably be characterized as *"in the business* of supplying information for the guidance of others in their business transactions" (*Anderson*, 115 Ill.2d at 153, 104 Ill.Dec. at 692, 503 N.E.2d at 249 quoting *Moorman* ). If the counterclaim is accepted as true, Continental (a bank holding company) made the alleged misrepresentations in the course of its business, but its business was *not* itself the supplying of information. That is fatal to Insurers' negligent misrepresentation claim, and their counsel had to know it.

This opinion comes hard on the heels of another (this Court's sixteenth in this litigation), which has just imposed Fed.R.Civ.P. ("Rule") 11 sanctions on Insurers for some of the other litigation tactics they have pursued in these actions. Now the current and totally baseless—in legal terms, frivolous—"negligent misrepresentation" claim has had to be dealt with. It is frankly appalling to find lawyers from a responsible firm making the kind of arguments, and dealing with such clear and unambiguous precedent, in the way evidenced by the aspect of the current counterclaim that has been dealt with in this opinion.[4]

To the extent Insurers' counterclaim purports to state a claim for negligent misrepresentation, it is dismissed. No opinion is expressed on the other aspects of the counterclaim, on which briefing remains in progress.

## APPENDIX

## MEMORANDUM ORDER

### Dec. 11, 1986

This Court's November 13, 1986 memorandum opinion and order granted leave to

---

[4.] There is something terribly disturbing about this kind of work product emanating from a reputable law firm (one that has just observed the 100th anniversary of its founding). This Court is reluctant to believe those who head up the firm can be fully aware of the kind of lawyering these lawsuits have evinced (though for all this Court knows, the lawyers in charge of this litigation may be part of the firm's executive committee). Judge Schwarzer has, in the related Rule 11 context, required intrafirm circulation of his opinion imposing sanctions. *Heuttig & Schrom, Inc. v. Landscape Contractors Council of Northern California*, 582 F.Supp. 1519, 1522–23 (N.D.Cal.1984); and see Schwarzer, *Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181, 201–02 (1985). That seems justified here, and Insurers' counsel are directed to certify to this Court promptly that copies of this memorandum opinion and order and the immediately preceding one (the sixteenth) have been given to every member of the executive committee, managing committee or other governing body of the law firm.

Federal Deposit Insurance Corporation ("FDIC") to assert a counterclaim against plaintiffs Harbor Insurance Company, Allstate Insurance Company and National Union Fire Insurance Company of Pittsburgh, Pa. (collectively "Insurers"). As promised in their briefing on FDIC's motion for leave to file its counterclaim, Insurers have not only answered but advanced their own Counterclaim against Continental Illinois Corporation and Continental Illinois National Bank and Trust Company of Chicago (collectively "Continental") and a group of present or former Continental officer-directors (collectively the "Individual Defendants").

This Court has no desire to anticipate whatever problems Continental and the Individual Defendants may perceive in Insurers' new Counterclaim. One problem it poses, however, is so patent that to minimize further lawyering this Court is constrained to pose an inquiry to Insurers' counsel—an inquiry addressed to Counterclaim Count II, labeled "Negligent Misrepresentation."

This Court has had occasion to deal with such claims a number of times, but believes its last written opinion on that score was most likely in *Miller v. Affiliated Financial Corp.*, 600 F.Supp. 997, 998–99 (N.D. Ill.1984). At that time it quoted from *Knox College v. Celotex Corp.*, 117 Ill. App.3d 304, 307–08, 72 Ill.Dec. 703, 706, 453 N.E.2d 8, 11 (3d Dist.1983) (citations omitted):

> In Illinois, there is no cause of action for negligent misrepresentation unless the defendant is in the business of supplying information for the guidance of others in their business transactions with third parties.

That reflected uniform Illinois case law; see, e.g. (in addition to the cases cited in *Miller*), *Black, Jackson and Simmons Insurance Brokerage, Inc. v. IBM Corp.*, 109 Ill.App.3d 132, 64 Ill.Dec. 730, 440 N.E.2d 282 (1st Dist.1982), which in turn cited such

other cases as this Court's earlier opinion in *National Can Corp. v. Whittaker Corp.*, 505 F.Supp. 147 (N.D.Ill.1981). And so far as this Court is aware, the law remains the same today; see *Marino v. United Bank of Illinois, N.A.*, 137 Ill. App.3d 523, 528, 92 Ill.Dec. 204, 207, 484 N.E.2d 935, 938 (2d Dist.1985).

If "negligent misrepresentation" is indeed the theory of Insurers' claim, their counsel should promptly advise opposing counsel and this Court of the basis for advancing such claim, in light of the extensive Illinois case law this Court is duty-bound to follow. If on further consideration Insurers' counsel were to take the view Counterclaim Count II should be withdrawn, that decision should of course be communicated to opposing counsel and this Court quickly, to avoid opposing counsel's need to plead to that claim.