Martin A. **RANKOW**, et al., Plaintiffs,

v.

**FIRST CHICAGO CORPORATION, Defendant.**

No. 87 C 4880.

United States District Court, N.D. Illinois, E.D.

Feb. 5, 1988.

Michael J. Daley, Nisen, Elliott & Meier, Chicago, Ill., for plaintiffs.

Peter J. Kilchenmann, Lynn A. Goldstein, Chicago, Ill., for defendant.

## ORDER

BUA, District Judge.

This order concerns defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons stated herein, defendant's motion to dismiss is granted with respect to all counts.

## I.  FACTS

Beginning in April 1983, plaintiffs participated in a Dividend Reinvestment and Stock Purchase Plan provided by defendant First Chicago Corporation ("First Chicago"). The plan provided an opportunity for investors to reinvest their common stock dividends or to make optional cash payments toward the purchase of newly issued common stock. Participants in the plan received a 5% discount from the prevailing market price of the stock without payment of any brokerage commission or service charge. Immediately after investing in common stock offered through this plan,

plaintiffs would then sell short their shares on the open market.

The plan was governed by a prospectus issued by First Chicago. The prospectus provided that shares would be available at 95% of the average high and low sales prices of the stock as reported in the Wall Street Journal "on the first trading day of January, April, July and October of each year (the 'Pricing Date') commencing July, 1982."

In December 1984, First Chicago issued a new prospectus that changed the manner in which the price of the stock would be calculated. First, the stock would be priced at 95% of its average high and low sales prices as reported in the Wall Street Journal on the dividend payment date. Secondly, if the stock was not traded on the New York Stock Exchange ("NYSE") on the dividend payment date, then the pricing date to be used would be the last preceding date on which the stock was traded on the NYSE.

On January 1, 1985, First Chicago declared a dividend payment. However, it used January 2, 1985 for the pricing date, rather than the last preceding date the stock was traded on the NYSE. In December 1985, plaintiffs contacted Richard Weincek, the Senior Vice President of First Chicago, to inquire as to the pricing date to be used for the January 1, 1986 purchases. Weincek stated that January 2, 1986 would be used as the pricing date.

Plaintiffs then made an optional cash payment of $11 million. They immediately sold short this stock, assuming that January 2, 1986 was the pricing date that would be used by First Chicago. However, contrary to Weincek's representations, First Chicago followed the procedure set forth in the new prospectus for determining the pricing date, and used December 31, 1985 as the pricing date. Because the price of the stock was greater on December 31, 1985 than on January 2, 1986, plaintiffs had sold short more stock than they had acquired through the plan. As a result, they were forced to make additional purchases on the open market to satisfy their obligations. Plaintiffs now seek to recover the cost of covering their short sales on the open market.

Plaintiffs have alleged that First Chicago's conduct in using December 31, 1985 as the pricing date, rather than January 2, 1986, amounted to a breach of contract and negligent misrepresentation. Plaintiffs have also asserted that First Chicago violated Rule 10b–5 and Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (1982), as well as Section 18(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78r(a) (1982).

## II. DISCUSSION

### A. *Count I—Breach of Contract*

■ Plaintiffs argue that Weincek, acting as agent for First Chicago, offered to modify the terms of the plan, and that plaintiffs accepted this offer with their cash payment. First Chicago contends, however, that the prospectus denied Weincek any authority to modify the terms of the plan.

A principal may be bound by the actions of his agent if the agent had actual or apparent authority to bind him. *Malcak v. Westchester Park Dist.*, 754 F.2d 239, 244 (7th Cir.1985). Apparent authority is "such authority as the principal knowingly permits the agent to assume or which he holds his agent out as possessing—it is such authority as a reasonably prudent man, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Schoenberger v. Chicago Transit Auth.*, 84 Ill. App.3d 1132, 1137, 39 Ill.Dec. 941, 946, 405 N.E.2d 1076, 1081 (1980), *quoting Wing v. Lederer*, 77 Ill.App.2d 413, 417, 222 N.E.2d 535, 538 (1966). Nevertheless, whether the authority is express, implied, or apparent, it must be derived from the words or actions of the principal. *Rouse Woodstock, Inc. v. Surety Fed. Savings & Loan Ass'n*, 630 F.Supp. 1004, 1010 (N.D.Ill.1986). Furthermore, the party dealing with the agent has the obligation to verify the existence and scope of the agent's authority. *Schoenberger*, 84 Ill.App.3d at 1138, 39 Ill.Dec. at 946, 405 N.E.2d at 1081. Reliance on

indications of authority must be reasonable in light of the circumstances. *Rouse,* 630 F.Supp. at 1010.

In *Malcak, supra,* the Seventh Circuit examined the extent of an agent's authority to modify a contract that expressly limited his authority to act on behalf of the principal. The plaintiff in that case sued four individual commissioners of a municipal corporation for unlawful termination. 754 F.2d at 240. In addition to the alleged constitutional violations, the plaintiff claimed that the commissioners' verbal assurances regarding his performance created a contract for continued employment as long as he performed satisfactorily. *Id.* at 244. However, according to the corporation's operating policy manual: "An individual Board member has no legal or moral right to speak for the Park/Recreation Board unless specifically authorized to do so by action of the Board." *Id.* at 245. The court held that this statement in the manual denied individual commissioners any authority to make representations on behalf of the Board regarding a contract for continued employment. Thus, reliance by the plaintiff on the representations made by the individual commissioners would not support a contract under principles of agency or estoppel. *Id.*

Similarly, in the instant case, the prospectus denied any individual the right to speak on behalf of First Chicago in contradiction of the information contained in the prospectus. The prospectus stated: "No person is authorized by First Chicago Corporation to give any information or to make any representations, other than those contained in this prospectus, in connection with the offer contained in this prospectus." This statement provided adequate notice of Weincek's lack of authority, regardless of whether plaintiffs ever read the prospectus. Knowledge of material contained in a prospectus is imputed to investors, even if they have not read such a document. *Zobrist v. Coal-X, Inc.,* 708 F.2d 1511, 1518 (10th Cir.1983). When a party is put on notice that the agent lacks authority to bind the principal, "belief that the agent has apparent authority to bind the principal is unreasonable; the principal

will not be bound under principles of agency or estoppel." *Malcak,* 754 F.2d at 245.

Because First Chicago never authorized anyone to modify the terms of the prospectus, Weincek lacked authority to change the pricing date. Furthermore, plaintiffs knew or should have known that no one was authorized to make representations that contradicted the prospectus. Thus, any reliance by plaintiffs on Weincek's representations about the pricing date was unreasonable. Such reliance will not support a finding of a contract under the principles of agency. Because Weincek had no authority to modify the contract, and because the prospectus alerted plaintiffs to Weincek's lack of authority, plaintiffs have failed to state a claim for breach of contract. Therefore, Count I is dismissed.

### B. *Count II—Negligent Misrepresentation*

■ Plaintiffs also contend that Weincek's representation as to the pricing date is actionable under the theory of negligent misrepresentation. Although the Illinois Supreme Court has held that purely economic losses cannot be recovered under tort claims, "economic loss is recoverable . . . where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Black, Jackson and Simmons Ins. Brokerage, Inc. v. IBM Corp.,* 109 Ill.App.3d 132, 134, 64 Ill. Dec. 730, 731–32, 440 N.E.2d 282, 283–84 (1982), *quoting Moorman Mfg. Co. v. National Tank Co.,* 91 Ill.2d 69, 88–89, 61 Ill.Dec. 746, 755, 435 N.E.2d 443, 452 (1982). Thus, under Illinois law, the tort of negligent misrepresentation is very narrowly defined. In order for a plaintiff to state a claim for negligent misrepresentation, "the defendant must be in the business of supplying information." *Black, Jackson and Simmons,* 109 Ill.App.3d at 135–36, 64 Ill.Dec. at 732, 440 N.E.2d at 284.

In the case at bar, plaintiffs cannot sue for negligent misrepresentation because the defendant, a bank, does not engage in the business of supplying information.

This issue was resolved in *National Union Fire Ins. Co. of Pittsburgh v. Continental Ill. Corp.*, 654 F.Supp. 316 (N.D.Ill.1987). In that case, several insurance companies filed a counterclaim against a bank holding company and its officials claiming that they were entitled to indemnification because of the bank's alleged negligent misrepresentations. *Id.* at 317. The court held that "[t]here is no way in which Continental (or its officials charged with the alleged misrepresentation) can conceivably be characterized as '*in the business* of supplying information for the guidance of others in their business transactions.'" *Id.* at 318 (emphasis in original). Although the bank holding company made the representations in the course of its business, its business did not entail supplying information. Therefore, the court dismissed the negligent misrepresentation claim. *Id.*

Contrary to this well-established authority limiting the scope of negligent misrepresentation, plaintiffs seek to hold First Chicago liable for its alleged negligent misrepresentations. However, First Chicago is not in the business of supplying information for the guidance of others in their business transactions. Therefore, this claim does not fall within the narrow limits of negligent misrepresentation delineated by Illinois courts. Because plaintiffs have failed to state a claim upon which relief can be granted, Count II is dismissed.

### C. *Count III—Rule 10b-5 Violation*

■ Several requirements must be met before a plaintiff may seek relief under section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated by the Securities and Exchange Commission. The plaintiff must allege that the defendant made an untrue material representation or omitted to disclose material information in connection with the purchase or sale of securities, and that the plaintiff's reliance upon such representations resulted in his injury. 17 C.F.R. § 240.10b-5 (1987). The United States Supreme Court has also required the plaintiff to allege scienter—namely, that the defendant acted with an "intent to deceive, manipulate, or defraud." *Ernst & Ernst v.*

*Hochfelder*, 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). First Chicago contends that plaintiffs have neither alleged scienter nor established that their reliance on Weincek's representation caused their injury.

Indeed, plaintiffs have not alleged that First Chicago, through its agents and officers, acted with "an intent to deceive, manipulate, or defraud." Rather, plaintiffs contend that they have satisfied the scienter requirement by alleging facts sufficient to establish recklessness. In *Hochfelder*, the Supreme Court refused to decide the issue of whether an allegation of recklessness was sufficient to satisfy the scienter requirement for civil liability under Rule 10b-5. *Id.* at 193 n. 12, 96 S.Ct. at 1381 n. 12. Nevertheless, the Court did recognize that reckless behavior has been considered to be a form of intentional conduct under certain circumstances. *Id.*

It is true, as plaintiffs assert, that the Seventh Circuit has repeatedly held that "reckless behavior" is sufficient to satisfy the scienter requirement set forth in *Hochfelder*. *See Panter v. Marshall Field & Co.*, 646 F.2d 271, 282 (7th Cir.), *cert. denied*, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed. 2d 631 (1981); *Sanders v. John Nuveen & Co.*, 554 F.2d 790, 792 (7th Cir.1977), *cert. denied*, 450 U.S. 1005, 101 S.Ct. 1719, 68 L.Ed.2d 210 (1981); *Sundstrand Corp. v. Sun Chem. Corp.*, 553 F.2d 1033, 1044 (7th Cir.), *cert. denied*, 434 U.S. 875, 98 S.Ct. 224, 54 L.Ed.2d 155 (1977). The Seventh Circuit, however, has emphasized that recklessness will not be liberally construed. *Sanders*, 554 F.2d at 793. Reckless conduct is such that the defendant actually knows or is aware of the danger that the plaintiff will be misled. *Sundstrand*, 553 F.2d at 1045. It is such a high standard that it "is equivalent to wilful fraud," *Securities & Exch. Comm'n v. Texas Gulf Sulphur Co.*, 401 F.2d 833, 868 (2d Cir. 1968) (Friendly, J., concurring) (en banc), and "should be viewed as the functional equivalent of intent." *Sundstrand*, 553 F.2d at 1045.

Plaintiffs have failed to allege that First Chicago's conduct was the "functional

equivalent of intent." The confusion created as to the correct pricing date did not result from "wilful fraud," but from an unauthorized statement by a First Chicago employee. Because there is no evidence that First Chicago knew about or approved of Weincek's statement, First Chicago's conduct was not such that it actually knew or must have been aware of the danger that the investors would be deceived.

Furthermore, in a 10b–5 case, the plaintiff must plead "loss causation"—namely, that the misrepresentation or omission actually caused the loss. *Kademian v. Ladish Co.*, 792 F.2d 614, 628 n. 11 (7th Cir. 1986); *see also Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 380–81 (2d Cir. 1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).[1] Such causation will be satisfied "only if the misrepresentation touches upon the reasons for the investment's decline in value." *Huddleston v. Herman & MacLean*, 640 F.2d 534, 549 (5th Cir.1981), *aff'd in part and rev'd in part on other grounds*, 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983). However, "an independent intervening cause, such as a fluctuation in the stock market, will break the chain of causation." *In re Catanella*, 583 F.Supp. at 1416; *see also Fryling v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 593 F.2d 736, 743–44 (6th Cir.1979) (causation not established where fluctuations in market, rather than fraud, caused the loss).

There is no indication that the conduct on the part of First Chicago actually affected the price of the stock. Rather, the loss

was sustained due to the intervention of market fluctuations. Nevertheless, plaintiffs are satisfied to make the tenuous connection between the representation by Weincek regarding the pricing date to be followed and the resulting movement in the market. However, "defendant's failure to disclose [is] ... not the proximate cause of plaintiff's losses where the ebbs and flows of the stock market intervened." *In re Catanella*, 583 F.Supp. at 1417. Plaintiffs, therefore, have not alleged facts sufficient to show that First Chicago's actions caused the decline in the market.

Because plaintiffs have not alleged scienter or that First Chicago's conduct actually caused the loss complained of, they have not satisfied all of the requirements necessary to sustain a 10b–5 cause of action. Therefore, Count III is dismissed.

### D. *Count IV—§ 18(a) Violation*

■ In order to state a claim under § 18(a) of the Securities Exchange Act of 1934, a plaintiff must allege that he suffered a loss as a result of a purchase or sale of securities, in reliance upon a false or misleading document filed with the Securities and Exchange Commission ("SEC"). 15 U.S.C. § 78r(a) (1982).

For all its claims of material omissions and misrepresentations, plaintiffs have never alleged that First Chicago filed a false statement with the SEC. In fact, the prospectus filed with the SEC listed the pricing date that First Chicago actually followed. Plaintiffs' failure to allege that a

---

**1.** Plaintiffs contend that "loss causation" need not be alleged if material information has been withheld from them. In *Kaplan v. Vornado, Inc.*, 341 F.Supp. 212, 215 (N.D.Ill.1971), the court stated that if a showing of materiality has been made in a 10b–5 action, then the plaintiff has made a sufficient showing of causality between the alleged violation and the loss. That court based its decision on the United States Supreme Court decision in *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). However, the decision in *Mills* involved a violation of § 14(a) of the Securities Exchange Act of 1934, not § 10(b) and Rule 10b–5. Furthermore, the *Kaplan* decision was rendered before the Seventh Circuit's decision in *Kademian*.

The Seventh Circuit has recognized that, on a showing of materiality of the withheld information, it will presume a plaintiff's reliance on the alleged violation of the defendant. *Michaels v. Michaels*, 767 F.2d 1185, 1200 (7th Cir.1985), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986). However, this does not do away with the requirement of pleading a causal relationship between the conduct complained of and the resulting injury. *See, e.g., Schlick*, 507 F.2d at 381, wherein the court held that even though a court may presume plaintiff's allegations of transaction causation on a showing of materiality, the plaintiff nevertheless "need[s] [to] show loss causation with respect to his claim for relief under 10b–5...." *See also In re Catanella and E.F. Hutton and Co. Secs. Litig.*, 583 F.Supp. 1388, 1415 (E.D.Pa.1984).

false document was filed with the SEC is fatal to their § 18(a) cause of action.

Even if plaintiffs could show that the document filed with the SEC was false and misleading, they must also allege that their damages resulted from reliance upon the fraudulent document. *Ross v. A.H. Robins Co.*, 607 F.2d 545, 552–53 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). However, if plaintiffs would have relied upon the prospectus filed with the SEC, then no damages would have resulted; plaintiffs would have based their investment calculations on the correct pricing date. Instead, plaintiffs relied upon the statement of Weincek. Nowhere is it alleged that Weincek's statement was contained in a document filed with the SEC. Clearly, plaintiffs have failed to allege that their damages were caused by their reliance upon a misstatement filed with the SEC.[2]

Because plaintiffs have not alleged that they suffered damages from reliance upon a false or misleading document filed with the SEC, the complaint has failed to state a claim under § 18(a). Therefore, Count IV is dismissed.

### III. CONCLUSION

For the foregoing reasons, this court grants defendant's motion to dismiss for failure to state a claim upon which relief can be granted.

IT IS SO ORDERED.

---

**2.** Moreover, plaintiffs are required to allege that the false or misleading statements affected the market price of the stock. *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 525 (S.D.N.Y.1977); *Rich v. Touche Ross & Co.*, 415 F.Supp. 95, 103 (S.D.N.Y.1976). "Market prices of publicly traded securities may be affected by a panoply of concrete and subtle influences, among them: the corporation's earnings per share, price-earnings ratio, dividend history, competitive market position for its goods or services, book value of its assets, investor confidence in a particular sector of the economy or in the economy generally, or in management capabilities." *Rich*, 415 F.Supp. at 103. Plaintiffs allege that Weincek's statement regarding the pricing date to be used affected the price of the stock. Although the decline in the market price of the stock may be attributed to many factors, Weincek's statement is not one of them.