Jeri J. BERMAN, Plaintiff,

v.

Albert W. THOMSON, A. D. Martin, M. J. Coen, Ralph A. L. Bogan, Jr., Edward D. Boshell, Francis C. Woolard, J. Earle May, Herbert F. Korholz, American Gypsum Company, a New Mexico corporation, and the Susquehanna Corporation, a Delaware corporation, Defendants.

No. 65 C 2051.

United States District Court,
N. D. Illinois, E. D.

May 14, 1970.

Arnold I. Shure, L. Louis Karton, Edward Slovick, Chicago, Ill., for plaintiff.

Charles S. Rhyne, Courts Oulahan, Washington, D. C., Robert O. Mansell, Chicago, Ill., for defendants.

## MEMORANDUM

AUSTIN, District Judge.

On November 22, 1968 this court entered an order denying plaintiff's motion for summary judgment on the issue of liability. See Berman v. Thomson, 45 F.R.D. 342 (N.D.Ill.1968). Because decisions which could be controlling on the issues involved in this case have subsequently been handed down, the court has taken under advisement plaintiff's motion to vacate the prior order and to enter summary judgment in her favor on the issue of liability on Count I.

The facts and plaintiff's contentions relative thereto were set forth in the court's prior opinion:

█ "Plaintiff sues derivatively on behalf of The Susquehanna Corporation and on behalf of herself and all shareholders of Susquehanna similarly situated to obtain relief against defendants, The Susquehanna Corporation, American Gypsum Company and Herbert F. Korholz, a director of both corporations. Plaintiff alleges that defendants violated Rule 14a–9, promulgated by the SEC under the authority of the Securities Exchange Act of 1934, 15 U.S.C. Section 78n(a). Because Susquehanna was registered pursuant to Section 12(g) of the Act, the corporation and directors were subject to Rule 14a–9. Rule 14a–9 reads:

No solicitation * * * shall be made by means of any proxy statement * * containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading * * *

A claim for relief in favor of a private plaintiff may be granted under Rule 14a–9. J. I. Case v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964). Although other violations of Rule 14a–9 are alleged in her complaint, on this motion for summary judgment on the issue of liability plaintiff relies solely on the following undisputed facts.

By late 1965 Susquehanna had liquidated substantial railroad properties and was attempting to acquire operating companies which had earnings to offset an accumulated tax loss. On December 7, 1965, the shareholders of Susquehanna approved the merger of defendant American Gypsum Company into Susquehanna by a vote of 1,866,870 shares out of 2,487,613 shares entitled to vote; this majority exceeded the two-thirds vote of outstanding shares required by state law and represented 93% of all shares actually voting. Roughly, 1,200,000 shares were obtained by use of a proxy statement soliciting votes on behalf of Susquehanna's management which statement was mailed on November 12, 1965. Included in the proxy statement was a balance sheet as of June 30, 1965 (unaudited), which stated 'Marketable securities at cost * * * $1,429,428.' A footnote entitled '11. Events Subsequent to June 30, 1965' stated, 'The company has invested, since June 30, 1965, approximately 6 million dollars in marketable securities of listed domestic *corporations*. None of the holdings is representative of a 10% or more interest.' The 6 million dollar investment in fact consisted of 289,500 shares of General Refractories Company (8½% of the total outstanding shares) which had been acquired shortly prior to October 21, 1965, and the Susquehanna Board of Directors had authorized the purchase of $1,850,000 more of Refractories stock to be deferred until the completion of the merger of Susquehanna and Gypsum. The shares already purchased represented about 22% of the total assets of Susquehanna (based on book values) and about 23% of assets minus liabilities. Plaintiff contends that defendants omitted to state the material fact that the 6 million dollar investment was all in Refractories, that the omission was misleading to shareholders in making theire decision on the

Gypsum merger, that Rule 14a–9 was therefore violated, and that summary judgment on the issue of liability should be entered." Berman v. Thomson, supra, 45 F.R.D. at 344.

In denying plaintiff's motion for summary judgment, this court specified three issues on which the parties were in dispute and which required a trial to resolve: (1) the financial injury sustained by plaintiff, and the class and corporation she represents, as a result of the merger; (2) the causal relationship between the proxy statement and the merger; and (3) the materiality of the admitted omission. The court will now examine each of these grounds in light of Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970), Mills v. Electric Auto-Lite Company, 403 F.2d 429 (7th Cir. 1968) and Swanson v. American Consumer Industries, Inc., 415 F.2d 1326 (7th Cir. 1969).

*Financial Injury.*

■ The Supreme Court in Mills v. Electric Auto-Lite, supra, has indicated that a judgment against one who has violated § 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), vindicates the statutory policy of full disclosure and furnishes an important means of enforcement of the statute. Therefore, a plaintiff who can prove a violation of the proxy statute is entitled to a judgment regardless of financial injury.

*Causation.*

In its prior opinion, the court felt that even if the omission was held to be material, there would still be an issue of fact as to whether or not the shareholders would have still approved the merger had they known of the omission. See the Court of Appeals decision in *Mills,* supra. This requirement of reliance was rejected by the Supreme Court in *Mills;* "There is no need to supplement this requirement (of materiality) * * * with a requirement of proof of whether the defect actually had a decisive effect on the voting." 396 U.S. at 384–385, 90 S.Ct. at 622.

*Materiality.*

■ The sole ground remaining on which to sustain the court's prior ruling is that of materiality. The plaintiff contends that the Supreme Court in *Mills* declared a new test of materiality by its statement "that determination (of materiality) itself indubitably embodies a conclusion that the defect was of such a character that it might have been considered important by a reasonable shareholder in the process of deciding how to vote." 396 U.S. at 394, 90 S.Ct. at 621. If this was the court's intention, the test so declared would seem to be indistinguishable from other tests developed; "material in the sense that an average prudent investor ought to be informed." Mills v. Electric Auto-Lite Company, supra, 403 F.2d 433 (apparently adopting District Court's definition); Johns Hopkins University v. Hutton, 422 F.2d 1124 (4th Cir. 1970); or "whether 'a reasonable man would attach importance [to the fact not disclosed] in determining his choice of action in the transaction in question'." Rogen v. Ilikon Corporation, 361 F.2d 260, 266 (1st Cir. 1966); Securities and Exchange Com'n v. Texas Gulf Sulphur Co., 401 F.2d 833, 849 (2nd Cir. 1968). And materiality is to be determined under all the circumstances existing at the time of the transaction. Kohler v. Kohler Co., 319 F.2d 634 (7th Cir. 1963).

Plaintiff contends that the two decisions of the Court of Appeals for this Circuit, *Mills* and Swanson v. American Consumer Industries, Inc., supra, have laid down the rule which has been expressly approved by the Supreme Court in *Mills,* that materiality is a question of law to be determined by the court and not the trier of fact, and since there are no disputed issues of fact here, the court may decide materiality. The traditional assumption has been that whether or not a fact is material is to be decided by the jury. Rogen v. Ilikon Corporation, supra; Myzel v. Fields, 386

F.2d 718 (8th Cir. 1967); Weitzen v. Kearns, 271 F.Supp. 616 (S.D.N.Y. 1967); Richland v. Crandall, 262 F.Supp. 538 (S.D.N.Y.1967); Miller v. Steinbach, 268 F.Supp. 255 (S.D.N.Y.1967); Northwest Paper Corporation v. Thompson, 421 F.2d 137 (9th Cir. 1969). The latest case to speak on the issue, The Johns Hopkins University v. Hutton, supra, decided after the Supreme Court decision in *Mills,* stated that "Generally the issue of materiality, resting as it does upon the reaction of a 'reasonable man,' cannot be decided by summary judgment." It can be so decided only where reasonable minds could not differ. The Court of Appeals in *Mills* and *Swanson* found the omissions material as a "matter of law." In absence of a clearer direction to the contrary, this court understands the Court of Appeals decisions in *Mills* and *Swanson* to mean that on the particular facts of those cases reasonable minds could not differ on the question of materiality and therefore that question was no longer a matter to be determined by the trier of fact.

■ Therefore, the plaintiff here would not be entitled to summary judgment unless the court concludes that reasonable minds could not differ on whether this omission "might have been considered important by a reasonable shareholder who was in the process of deciding how to vote." The question of materiality must be determined in light of the purposes of the Act. § 14 was "intended to promote 'the free exercise of the voting rights of stockholders' by ensuring that proxies would be solicited with 'explanation to the stockholder of the real nature of the questions for which authority to cast his vote is sought'", Mills v. Electric Auto-Lite, supra, 396 U.S. at 381, 90 S.Ct. at 620, and to "prevent management or others from obtaining authorization for corporate action by means of deceptive or inadequate disclosure in proxy solicitation." J. I. Case Co. v. Borak, supra, 377 U.S. at 431, 84 S.Ct. at 1559. The significance of such a large acquisition as Susquehanna made of General Refractories stock is

indicated by the rules promulgated by the S.E.C. under § 13(a) of the 1934 Act as "appropriate for the proper protection of investors." Rule 13a–11 requires every corporation whose securities are registered pursuant to § 12 of the Act to "file a current report on Form 8–K within ten days after the close of any month during which any of the events specified in that form occurs." 17 C.F.R. § 240.-13a–11. One of those events is "if the registrant has acquired * * * a significant amount of assets otherwise than in the ordinary course of business." Form 8–K, Item 2. The registrant then must disclose a "description of the assets involved and the identity of the persons from whom the assets were acquired." Form 8–K, Item 2. In instruction 4 of Item 2 an acquisition is "deemed to involve a significant amount of assets * * * if the net book value of such assets * * * upon such acquisition * * * exceeded 15 per cent of the total assets of the registrant." The acquisition which Susquehanna failed to disclose involved an asset whose book value was considerably in excess of 15% of Susquehanna's total assets. In *Swanson,* the shareholders of Peoria were called upon to approve a plan of reorganization whereby Peoria would be dissolved and the shareholders would exchange their shares for those of another corporation, ACI. Omissions in the proxy statement of an appraisal of the value of Peoria's assets, of data concerning the value of Peoria's shares, and of the intention of ACI to dispose of Peoria's physical plant and construct a new plant to serve the same market, were all held to be material as a matter of law. The court found that the shareholders should have been advised of these facts in order to properly evaluate the prospects of their company, to determine their respective equities in the company, and to ascertain the desirability of exchanging their equities for that of another corporation. In this instance, the shareholders of Susquehanna should have been advised that 22% of the corporation's assets were already invested in a single enterprise in

order to understand the nature of their equity in the corporation as then constituted before they could be expected to vote intelligently on whether to change the constitution of the corporation by the acquisition of Gypsum. On this proposition, the court finds reasonable minds could not differ and therefore the omissions were material as a matter of law.

*The Defenses of Good Faith, Honest Business Judgment and Protection of Corporate Opportunity.*

 To relieve the defendants of liability because they may have exercised good faith and honest business judgment in not disclosing this information would not be in furtherance of the statutory policy of full disclosure. Securities and Exchange Com'n v. Texas Gulf Sulphur Co., supra, 401 F.2d 852; Gerstle v. Gamble-Skogmo, Inc., 298 F. Supp. 66, 97 (E.D.N.Y.1969); Richland v. Crandall, 262 F.Supp. 538, 553 (S.D. N.Y.1967). Shareholders are entitled to the disclosure of all material information, not just that which the directors in good faith and honest business judgment feel they should have. The defendants here certainly do not contend that they did not know or in the exercise of due care could not have known that the 6 million dollar investment was in fact all in the shares of General Refractories. Nor may the corporation's interest in concealing its intention of acquiring additional General Refractories stock in order not to affect its market price excuse non-disclosure. Securities and Exchange Com'n v. Texas Gulf Sulphur Co., supra. If those who direct the affairs of a corporation deem it in the best interests of the corporation not to disclose certain information, then they may not solicit shareholder approval of a transaction for which that information is material.

For the foregoing reasons, this court's order of November 22, 1968 is vacated and summary judgment as to the issue of liability on Count I is entered in favor of the plaintiff as of November 22, 1968.