Marvyn GOULD, Executor of the Estate of J. Donald Rogasner, and J. David Pincus, on behalf of themselves and all others similarly situated, Plaintiffs,

Mary S. McCord and Charles T. McCord, Jr., Intervening Plaintiffs,

v.

AMERICAN HAWAIIAN STEAMSHIP COMPANY et al., Defendants.

Civ. A. No. 3707/3722.

United States District Court, D. Delaware.

Dec. 6, 1972.

See also, D.C., 55 F.R.D. 475.

855

William Prickett and Rodman Ward, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, Del., Harold E. Kohn, Aaron M. Fine and Stephen E. Haberfeld, of Harold E. Kohn, P. A., Philadelphia, Pa., for plaintiff Gould and all those similarly situated and for intervening plaintiffs.

Ralph F. Keil, of Keil & Keil, Wilmington, Del., for plaintiff Pincus.

S. Samuel Arsht and William O. La-Motte, III, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., Richard E. Nolan, Christopher Crowley and Arthur F. Golden, of Davis, Polk & Wardwell, New York City, for defendant R. J. Reynolds Tobacco Co.

David F. Anderson and Richard F. Corroon, of Potter, Anderson & Corroon, Wilmington, Del., John W. Castles, III, Michael Murphy and Muriel Bell, of Lord, Day & Lord, New York City, for defendants American-Hawaiian Steamship Co., National Bulk Carriers, Inc., Daniel K. Ludwig and Hal A. Kroeger.

R. Franklin Balotti, of Richards, Layton & Finger, Wilmington, Del., W. Foster Wollen, of Shearman & Sterling, New York City, for defendants Malcolm P. McLean, James K. McLean, Clara L. McLean, Disque D. Deane, Edward A. Hirs, James T. Murff and Beverly R. Wilson, Jr.

Howard M. Handelman, of Bayard, Brill & Handelman, Wilmington, Del., James V. Ryan, of Webster, Sheffield, Fleischmann, Hitchcock & Brookfield, New York City, for the defendants Litton Industries, Inc., Monroe International Corp. Retirement Plan Trust, and Joseph T. Casey.

OPINION

CALEB M. WRIGHT, Chief Judge.

This is a suit challenging certain aspects of a merger of McLean Industries, Inc. (McLean) into R. J. Reynolds Tobacco Company (Reynolds). On September 17, 1971, this Court granted the plaintiffs' motion for summary judgment on the issue of liability under the Securities Exchange Act of 1934 (the 1934 Act), § 14(a), 15 U.S.C. § 78n(a), against Reynolds as the surviving corporate defendant and against four individual defendants. See D.C., 331 F.Supp. 981. In the same opinion, the Court denied the plaintiffs' motion for summary judgment against the remaining defendants.

During oral argument on a subsequent motion filed by one of the four individu-

al defendants against whom the partial summary judgment was entered, the defendants raised the question of the availability of the defense of good faith to a claim for damages for a violation of § 14(a) and rule 14a–9 promulgated pursuant thereto. At the Court's direction, the issue was briefed and argued by the parties. In conjunction with the presentation of the good faith question, Hal A. Kroeger (Kroeger) and Daniel K. Ludwig (Ludwig), two of the four individual defendants against whom partial summary judgment was entered, moved to modify the Court's September 17, 1971 decision and to vacate the order granting the partial summary judgment on the ground that the Court utilized an incorrect legal standard under § 14(a) in determining liability. In essence, Ludwig and Kroeger maintain that, under § 14(a), as a prerequisite to individual liability for monetary damages, each must either be shown to have acted with scienter in approving the McLean proxy material or be afforded an opportunity to interpose evidence to establish the defense that he acted in good faith in approving said material.

The issue, therefore, which has been briefed and argued is the standard or degree of culpability required to hold a defendant liable under the statutes and rules regulating the solicitation of proxies. Resolution of this question will, of course, govern the determination of liability for the remaining defendants, as well as for the defendants who were found liable previously.

As set out below, the pertinent statute and rule governing proxy solicitations make no specific reference to the nature of relief which may be granted for a violation or the factors pertinent to establish individual monetary liability.[1] The Supreme Court has held that the range of relief which may be ordered to remedy such violations includes the imposition of monetary damages against the offending party, J. I. Case Co. v. Borak, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), and has defined certain of the legal standards pertinent to establishing a § 14(a) violation e. g. materiality—see Mills v. Electric Auto-Lite Co., 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed. 2d 593 (1970). However, the Court has not discussed the question of the degree of knowledge or standard of conduct which must be proved to hold an individual liable for monetary damages under § 14(a). Moreover, in the aftermath of the *Borak* and *Mills* cases, most of the litigation under the proxy section has involved the issues of materiality and general liability, rather than the question of a particular individual's liability for false or misleading proxy solicitations.

The defendants argue that the appropriate standard is one of "scienter" as the term has been developed in litigation

1. Section 14(a) and Rule 14a–9 provide in pertinent part:

§ 14, 15 U.S.C.A. 78n   Proxies

(a) It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

Rule 14a–9, 17 C.F.R. § 240.14a–9   False or Misleading Statements

(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

involving other sections of the Securities Act, notably § 10(b) of the 1934 Act, 15 U.S.C. § 78j(b). They maintain that to be held liable an individual defendant must have approved the McLean proxy materials with scienter concerning the material misstatements and omissions. As utilized by the defendants, scienter embodies conduct evidencing an intent to defraud or an intent to deceive, actual knowledge, or conduct amounting to gross negligence or recklessness.[2] If proof of scienter is not an affirmative portion of the plaintiffs' case, the defendants contend that they are entitled to prove their good faith, or lack of scienter, and thereby preclude personal liability. The defendants argue that good faith is synonymous with an absence of scienter, and therefore, the only difference between the two standards is the burden of proof. In short, the defendants claim that some degree of culpability more substantial than mere negligence is a prerequisite to their liability.

Asserting the status of outside or non-management directors, Kroeger, Ludwig and Joseph T. Casey (Casey), a third individual defendant found liable, contend that whatever the appropriate standard of conduct for insider directors and management, scienter must be required to hold individuals in their positions liable.

Having argued for scienter as a necessary element of proof, the defendants claim that (a) the present record and undisputed facts do not support a finding that they acted with scienter; or

(b) they should be permitted at trial to elicit proof of their good faith to negate any presumption or inference of scienter.

The plaintiffs maintain that scienter is not a prequisite to personal liability under § 14(a). Citing the statute's failure to make any reference to an individual's knowledge or state of mind, they argue that the appropriate standard is one of absolute liability. Thus, they contend that whenever proxy materials are materially false or misleading, all persons who solicited or permitted their names to be utilized in the solicitation are liable regardless of their good faith, lack of knowledge, or due diligence. In addition, the plaintiffs assert that under this Court's previous opinions, the individual defendants have been determined to have acted with scienter, and are liable even under the scienter standard.

Posing a third standard of conduct, Reynolds argues that the appropriate standard is one of negligence. Therefore, if the defendants knew or should have known of any of the material misstatements and omissions they are liable. In addition, Reynolds claims that the record supports the entry of the summary judgments against Casey, Kroeger and Ludwig since all three had actual knowledge of the facts which were materially false or misleading or omitted from the proxy materials.[3]

In addition to the arguments directed toward the scienter requirement and related questions, the parties have raised several other issues in their briefs. Casey contends that as an outside director of McLean, he was not a

---

2. A similar definition of scienter has been developed and employed in numerous cases dealing with § 10(b) and Rule 10b–5 violations. See e. g. Shemtob v. Shearson, Hammill & Co., 448 F.2d 442 (2nd Cir. 1971); Globus v. Law Research Service, Inc., 418 F.2d 1276 (2nd Cir. 1969); and Trussell v. United Underwriters, Ltd., 228 F.Supp. 757 (D.Colo.1964).

3. Reynolds maintains that since the record supports this Court's finding that the defendants knew the proxy materials were false and misleading, the entry of sum-

mary judgment was proper under the stricter scienter standard. Therefore, it argues that the Court need not decide whether liability can be established by proof of mere negligence.

The primary purpose behind the request for the parties to brief and argue this issue was the Court's intention to resolve the scienter vs. negligence question for all defendants involved in this litigation. Since there are several defendants against whom the issue of liability will not be determined until trial, this question must be decided at this time.

member of management and therefore, did not participate in the solicitation of proxies. Moreover, he argues that he did not permit his name to be used in connection with the solicitation at issue. These arguments are without merit. The McLean proxy statement comprised a solicitation on behalf of management. Proxy Statement, p. 1 and C.F.R. § 240.-14a–4. The materials clearly indicate management's recommendations and request shareholder support for said recommendations. (McLean letter, pp. 1 and 2, Proxy Statement, pp. 1 and 5). Under Delaware law, the Board of Directors comprised the management of the corporation, 8 Del.Code § 141(a) and Campbell v. Loew's, Inc., 36 Del.Ch. 563, 134 A.2d 852 (1957) and was the sole body empowered to make proxy solicitations on behalf of management. See Dillon v. Berg, 326 F.Supp. 1214, 1226–1228 (D.Del.1971), and Empire Southern Gas Co. v. Gray, 29 Del.Ch. 95, 46 A.2d 741, 744 (1946). The S.E.C. regulations afford a dissenting director an opportunity to disassociate himself from the Board of Directors' recommendations, C.F.R. § 240–14a–101(3)(a)(1); however, such disavowel must be made in the form of written notice to the Board. Id. Casey gave no such written notice, and, in fact, not only supported the Board's recommendations, but also approved a draft form of the proxy materials. The failure to effect such notice and to apprise the shareholders of any objections he had to the proxy materials cast Casey in the role of a person soliciting proxies on behalf of management. Casey's belated attempt to create a disputed factual issue through his claim that he was not part of management as the term was utilized in the McLean proxy material is disingenuous since such a conclusion would countermand his legal status and responsibility under Delaware law and render the above cited S.E.C. regulation a nullity.

The plaintiffs have renewed their efforts to obtain the entry of summary judgments against American Hawaiian Steamship Company (American Hawaiian), Litton Industries, Inc. (Litton), and National Bulk Carriers, Inc. (National Bulk), under either § 14(a) or § 20 of the Act, 15 U.S.C. § 78t, Liabilities of Controlling Persons. The Court is of the opinion that the summary judgments requested should not be granted on the present record.

The Court will first discuss the appropriate standard of conduct or knowledge requisite to establish liability under § 14(a). It will then apply that standard to the factual situations surrounding Casey, Ludwig and Kroeger's participation in the McLean proxy solicitation.

## THE LEGAL STANDARD

As noted previously, neither the statutes and rules governing proxy solicitations, nor the Supreme Court cases dealing with proxy issues set forth the standard of culpability or fault necessary to establish individual liability for monetary damages. The parties have argued for three separate standards: (1) scienter, or conduct which is intentional or reckless in nature,[4] (2) negligence, and (3) absolute liability.

The Court is unable to accept the plaintiffs' contention that any person who solicits proxies or permits his name to be used for purposes of solicitation is strictly liable in any instance when the proxy materials are held to be materially false or misleading. The plaintiffs have failed to cite a single case in support of their position, and none of the other sections of either the 1933 Act or the 1934 Act have imposed absolute liability on an individual defendant. It is true that the § 14(a) and Rule 14a–9 contain language which might be construed to impose strict liability, and such a result would certainly

---

4. The "good faith" defense would fall within this category; however, the burden of proof would be shifted. See Section 18(a) of the 1934 Act, 15 U.S.C. § 78r(a), dealing with liability for misleading statements and § 20(a) of the 1934 Act dealing with controlling persons, 15 U.S.C. § 78t(a).

insure the accomplishment of a Congressional desire to protect stockowners in any instance in which a violation has occurred. Nonetheless, the Court is of the opinion that making directors guarantors of the accuracy of proxy materials would create serious practical problems for directors and would not fulfill other purposes of the Securities Acts. Certainly one of the primary purposes of the Securities Acts is to establish rules and regulations to guide management and broker's activities in securities dealings. When possible, the liability sections should be interpreted to afford incentives to directors to undertake active and rigorous scrutiny of corporate activities, and should not be construed to make such efforts of no significance in precluding liability for misstatements against which a director cannot reasonably protect. The strict liability standard would impose monetary obligations upon directors regardless of their efforts to ascertain the accuracy and comprehensiveness of the proxy materials. Thus, a director who made a detailed examination of corporate records and obtained legal and financial counsel to advise him would be liable even if the materials supplied him were deliberately falsified in a manner which he could not have ascertained. It is difficult to imagine a result more likely to dissuade conscientious individuals from assuming positions as outside directors since absent a complete knowledge of the corporation, a director runs the risk of liability for believing any information given to him. In the long run, such a standard might undermine the deterrence function of the Securities Acts. Presumably Congress has the power to impose such burdens on corporate directors; however, the Court cannot agree that Congress has done so absent a clear Congressional mandate which is not contained in § 14(a).

In support of the position that scienter is a requisite element of liability, Casey, Kroeger and Ludwig rely on the statutory or judicially construed standards of conduct imposed under other sections of the Securities Act of 1933 (1933 Act) and the 1934 Act. Stressing that these two Acts embody a comprehensive and interrelated regulatory scheme, these defendants argue that certain of the standards adopted under various sections of the 1933 and 1934 Acts dealing with other forms of securities' fraud ought to be employed under § 14(a). Analyzing the four sections in which Congress specifically authorized the recovery of monetary damages, §§ 11 and 12 of the 1933 Act, 15 U.S.C. 77k and 77*l* and §§ 9 and 18 of the 1934 Act, 15 U.S.C. 78i and 78r, the defendants contend that although Congress permitted the recovery of monetary damages for negligence or lack of due diligence under the 1933 Act, it premised recovery under the 1934 Act on proof of scienter.[5] Thus, these defendants contend that to avoid negating this evidenced Congressional intent, Courts must require proof of scienter for recovery under § 14(a) and the other sections of the 1934 Act which have been subsequently construed to provide a private remedy for damages.

The three defendants also argue that the federal courts have utilized the scienter requirement in their development of the issue of personal liability under § 10(b) of the 1934 Act and § 17(a)(2) of the 1933 Act, 15 U.S.C. § 77g(a)(2). Tracing the development of the scienter rule for 10b–5 litigation in several circuits, the defendants argue that the decisions adopting the scienter standard in such cases embody the majority and the better reasoned rule. Since § 17 and § 10(b) and particularly Rule 10b–5(b) thereunder employ language similar to that used in Rule 14a–9 prohibiting false and misleading statements and omissions, Casey, et al. contend that § 14(a) and Rule 14a–9 should be similarly interpreted and require sim-

---

5. The 1933 Act, §§ 11, 12, place the burden of establishing due diligence or lack of negligence on the defendants. Section 9(e) of the 1934 Act prohibits "willful" violations, while in § 18(a), "good faith" is made a complete defense.

ilar standards of culpability. This, they claim, is especially true since § 17(a)(2), Rule 10b–5 and Rule 14a–9 speak not in terms of the defendant's conduct, but rather in terms of the veracity or completeness of the disclosure.

Moreover, Casey, et al. maintain that the 1934 Act's legislative history indicates that § 14(a) manifests a Congressional concern with deliberate falsifications and not negligent misrepresentations.

Additionally, they point out that § 18 of the 1934 Act specifically establishes individual monetary liability for false and misleading statements in any document, including proxy materials, which is filed with the S.E.C. pursuant to its rules, but provides the defense of good faith. To allow recovery under § 14(a) for conduct not constituting scienter would, they allege, abrogate § 18 and the Congressional intention to provide the good faith defense to an action predicated upon misleading statements.

Further, these defendants argue that no case has squarely held that damages are recoverable from an individual under § 14(a) in the absence of a showing of scienter.

Finally, having exhausted the panoply of specific reasons supportive of a scienter requirement, the three defendants argue that strong policy considerations surrounding the Securities Acts and the role played by outside directors in corporate management mandate the utilization of the scienter standard to guarantee their continued participation in management and preclude enormous damage claims which are "entirely dependent upon fortuitous market movements." (Ludwig Brief, p. 21). Thus, they claim that outside directors are entitled to rely on expert legal counsel and financial advisors, and ought not be guarantors of the accuracy of these experts' analyses.

The Court is unable to accept the conclusion of Casey, et al. that proof of scienter is a prerequisite to establishing individual liability for damages under § 14(a). The appropriate standard of conduct as supported by lower court opinions and the rationale and language of the proxy statute and rule is one of liability for negligence. Thus, an individual who participates in a solicitation which utilizes materially false or misleading statements is liable if he knew or should have known that the statements were false or misleading.

The defendants' arguments in support of the scienter standard are unpersuasive. The legislative history as cited by the three defendants provides no significant assistance.

In addition, the fact that Congress required some form of scienter as a prerequisite to liability in §§ 9 and 18 of the 1934 Act does not persuade the Court that all other sections of that Act must be similarly interpreted to require scienter. It would be equally as logical to argue that since Congress specifically provided for damages in only these two sections, it did not intend to create damage actions under other sections. This rationale has not precluded the federal courts from permitting actions for damages under either § 10(b) or § 14(a) even though no specific provision for damages is made.[6] Such results make tenuous arguments about the scope of one Securities Act section predicated upon inferences from Congressional silence in that section or Congressional activity in another section.

The defendants' reliance on the establishment of a modified scienter requirement in support of its adoption in § 14(a) actions is also unfounded. Initially, it should be noted that there is substantial dispute among the Circuit Courts regarding whether, under § 10(b) scienter is the standard of conduct requisite to establish liability for monetary damages.[7] However, in the opinion of this Court, this conflict need

---

6. See Superintendent of Insurance v. Bankers Life & Casualty Co., 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971) and J. I. Case Co. v. Borak, supra.

7. The 5th and 2nd Circuits require some form of "scienter" although it is substantially less demanding than common law fraud and includes conduct indicating the

not be examined for purposes of this action.

■ The appropriate standard of conduct for a particular section of the Securities Act should be determined with reference to that section, and not by analogy to generalized considerations pertinent to other, perhaps significantly different sections. An examination of the several sections cited by the defendants evidences that they are designed to accomplish different purposes, that they prohibit diverse types of activity, and that they do not necessarily suggest identical degrees of culpability to estab-lish personal liability. Section 10(b) outlaws manipulative and deceptive devices.[8] While the defendants stress the similarity between the wording of Rule 10b–5(b) and Rule 14a–9 in terms of *prohibiting materially false or misleading statements*,[9] they avoid the necessity of interpreting each regulation in light of the statutory provision pursuant to which it was adopted. Therefore, although the operative language of Rule 14a–9 is substantially similar to that in Rule 10b–5(b) and in § 17, the substantive legislation does not embody a similar congruence and does not man-

intent to defraud or deceive, willful or knowledgeable conduct, gross negligence, or recklessness. See S.E.C. v. Texas Gulf Sulphur Co., 401 F.2d 833, 867–868 (2nd Cir. 1968) ; Globus v. Law Research Services, Inc., supra; Shemtob v. Shearson, Hammill & Co., supra; Astor v. Texas Gulf Sulphur Co., 306 F.Supp. 1333 (S.D.N.Y.1969) ; Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970) [The 2nd Circuit permits the SEC to obtain injunctive or prophylactic relief on a showing of negligence—S.E.C. v. Manor Nursing Centers, Inc., 458 F.2d 1082 (2nd Cir. 1972) and Hanly v. S.E.C., 415 F.2d 589 (2nd Cir. 1969).]

The 7th, 8th, 9th, and perhaps 10th Circuits have indicated that scienter is not a requirement under 10(b). Kohler v. Kohler Co., 319 F.2d 634 (7th Cir. 1963) ; Myzel v. Fields, 386 F.2d 718 (8th Cir. 1967) cert. denied 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968) ; Ellis v. Carter, 291 F.2d 270 (9th Cir. 1961) ; Royal Air Properties, Inc. v. Smith, 312 F.2d 210 (9th Cir. 1962) ; compare Stevens v. Vowell, 343 F.2d 374 (10th Cir. 1965) and Trussell v. United Underwriters, Ltd., supra.

The 3rd Circuit has not ruled on the question of whether an action under 10b–5 (b) must prove scienter, however Judge Adams in his dissenting and concurring opinion in Kohn v. American Metal Climax, Inc., 458 F.2d 255 (3rd Cir. 1972) argues in favor of the scienter requirement.

8. Section 10, 15 U.S.C.A. § 78j Manipulative and Deceptive Devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

9. Rule 10b–5, 17 C.F.R. 240.10b–5 Employment of Manipulative and Deceptive Devices.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

Compare Rule 14a–9: see footnote 1 supra. The problem concerning the necessity for proof of scienter under Rule 10b–5 arises only under subsection (b), since both (a) and (c) use language which clearly require proof or an intent to defraud. See Pappas v. Moss, 393 F.2d 865 (3rd Cir. 1968) and S.E.C. v. Texas Gulf Sulphur Co., supra 401 F.2d at 867. (Friendly concurring).

date identical standards of culpability. In his concurring and dissenting opinion, Kohn v. American Metal Climax, Inc., 458 F.2d 255 (3rd Cir. 1972), Judge Adams sets forth in considerable detail his analysis of the elements of a private cause of action under § 10(b) and the numerous cases holding either way on the question of the necessity for proving scienter to establish individual liability. Id. at 279–288. In concluding that scienter is a necessary element of a 10(b) action, Judge Adams emphasizes that the section was specifically designed to deal with deceptive or manipulative practices, and that the Congressional intent to require some degree of culpability greater than negligence was evinced by the utilization of words denoting fraudulent and intentional conduct.[10] It is from this perspective he accuses those circuits not requiring proof of scienter of abandoning the Congressional intent which is evidenced explicitly in the legislative history of the section. Id. at 286. See 3 Loss, Securities Regulation, p. 1766 (2nd ed. 1961).

While § 10(b) deals with a type of conduct categorized as deceptive or manipulative and perhaps suggests a requirement of some form of knowledge or fraudulent participation, Section 14(a) refers solely to the accuracy or completeness of a particular form of correspondence, the proxy solicitation. Making no reference to deceit or fraud, § 14(a) authorizes the S.E.C. to designate the necessary standard for proxy disclosures. This the Commission has done in Rule 14a–9 without language connoting fraudulent or deceptive activity or illicit motive on the part of the solicitor.[11]

Certain of the 5th and 2nd Circuit's decisions holding that something more than negligence must be proved to establish a cause of action for damages under § 10(b) evidently represent, at least in part, an effort to reconcile what would otherwise result in the negation or avoidance of requirements of other sections of the Securities Acts which are designed to accomplish identical or similar results. See Herpich v. Wallace, supra 430 F.2d at 800–802; S.E.C. v. Tex-

10. 458 F.2d at 280, Judge Adams concurring and dissenting:
"Thus, it appears that Congress intended to grant a private action for damages suffered as a result of 'illicit practices,' consisting of 'manipulative and deceptive practices which have been demonstrated to fulfill no useful function.' Essential to the elements intended by Congress are the requirements that the defendant has acted in other than 'good faith' and that the plaintiff has 'relied' on the misleading statement. Nowhere in the Senate Report is there a manifestation of an intent by Congress to provide a cause of action based on either mere negligence or liability without fault. There is no evidence that Congress intended that under Section 10(b) anyone should be an insurer against false or misleading statements made non-negligently or in good faith.
It seems clear from the discussion of the legislative history of Section 10(b) and the administrative history of Rule 10b–5 that Congress and the SEC both intended, before any liability for misrepresentation might attach, that the element of culpability be present. This intent was manifested by the constant usage of words such as 'cunning,' 'ma-

nipulative,' 'deceptive,' 'fraudulent,' 'illicit,' 'fraud,' and lack of 'good faith,' and the absence of language indicating liability for negligent or non-negligent conduct. The inquiry then becomes whether courts have construed the language of the statute and rule so as to obviate the requirement of culpability that Congress and the SEC apparently contemplated."
In accord, Gerstle v. Gamble-Skogmo, Inc., 298 F.Supp. 66, 97 (E.D.N.Y.1969) and Globus v. Law Research Service, Inc., 287 F.Supp. 188, 197–199 (S.D.N.Y. 1968) affd. in part, reversed in part on other grounds, supra.

11. The defendants' analogy to § 17(a) is also unpersuasive. Although of more limited scope, § 17 of the 1933 Act, which prohibits "Fraudulent Interstate Transactions" in the offer and sale of securities, is quite similar in language and purpose to § 10(b), and therefore, the adoption of the scienter requirement for both sections may reflect the parallel between them. However, the defendants' attempt to equate § 17(a) and § 14(a) and Rule 14a–9 finds no support as each is designed to deal with considerably different aspects of the securities market.

as Gulf Sulphur Co., supra 401 F.2d at 867–868 (Friendly concurrence); Weber v. C.M.P. Corporation, 242 F.Supp. 321, 325 (S.D.N.Y.1965); see also 69 Colum. L.Rev. 1057, 1063, "Scienter and Rule 10b–5" (1969). No such conflicts preclude adoption of the negligence standard under § 14(a).[12]

The Court cannot accept the contention that awarding damages for negligent conduct and misrepresentations under § 14(a) would undercut and conflict with § 18 of the 1934 Act. Under § 18, any person making a false or misleading statement in any document filed pursuant to the 1934 Act is liable to any individual who, in reliance on the statement, purchased or sold a security at a price which was affected by the statement, unless the person making the statement can prove that he acted in good faith and had no knowledge that the statement was false, 15 U.S.C. § 78r. As noted previously, Casey, et al. argue that in providing for this type of good faith defense under § 18, Congress expressly rejected the negligence standard for liability for damages predicated on any form of false or misleading statements.[13]

Arguing that proxy materials are within § 18's coverage, the defendants protest that the application of the negligence standard and concomitant recovery for negligent misstatements under § 14(a) and Rule 14a–9 would eliminate the good faith defense in all cases involving proxy statements and nullify Congress's rejection of the negligence standard. However, the defendants have failed to acknowledge that, in spite of portions of overlap, §§ 18 and 14(a) involve the regulation of two fundamentally different types of securities activities. Section 18 provides broad coverage for any document filed pursuant to the 1934 Act and subjects an individual to liability to anyone buying or selling a security in reliance on a misleading statement in such a document. Section 14(a) is considerably more limited as it encompasses solely the solicitation of proxies and proxy materials. In light of the Supreme Court's admonitions concerning the paramount necessity to insure the sanctity of the mechanisms of corporate suffrage and for the dissemination of information to shareholders, see J. I. Case Co. v. Borak, supra, the conclusion that a more demanding standard of conduct might be imposed under § 14(a) than under § 18 is readily acceptable. In S.E.C. v. National Securities, Inc., 393 U.S. 453, 89 S.Ct. 564, 21 L.Ed.2d 668 (1969) while discussing a similar attempt to restrict the coverage of one section of the 1934 Act because of concurrent regulation through another section, the Supreme Court stressed the diverse set of circumstances governed by each section and refused to accept the attempted limitation.[14] The Su-

12. In fact, were the Court to attempt to analogize between the language and evident purpose of § 14(a) and another section of the Securities Acts, it would select § 11 of the 1933 Act dealing with liability for false registration statements. Both sections proscribe a form or type of disclosure, false or misleading statements and omissions, and both enumerate a specific class of individuals who bear liability for the failure to meet the required standard of disclosure. Moreover, both sections involve single specific documents which are of primary importance to two fundamental areas of securities regulation, sales of securities and the exercise of the corporate franchise. Since, as noted previously, § 11 imposes liability under the negligence standard, the parallel between these two sections would suggest adoption of the negligence standard under § 14(a).

13. The defendants rely on the legislative history of § 18 to sustain their claim that Congress expressly rejected the negligence standard for the section. They cite 2 Bromberg, Securities Law, Sec. 8.4 (461).

14. In the National Securities case, the Court rejected in rather perfunctory fashion, the defendant's argument that since § 14(a) regulated proxy statements, § 10(b) and Rule 10b–5 did not cover misrepresentations in proxy materials.

"Respondents' alternative argument that Rule 10b–5 does not cover misrepresentations which occur in connection with proxy solicitations can be dismissed rather quickly. . . . [T]he existence or non-existence of regulation

preme Court's reasoning is equally applicable to this effort to curtail § 14(a)'s efficacy through imposition of a standard of conduct pertinent to a much broader statutory prohibition.

■ In the only known cases dealing with § 14(a) which have discussed the scienter versus negligence question, the courts have consistently stated that liability for monetary damages may be imposed for negligent, false or misleading statements and that scienter need not be proved. Berman v. Thomson, 312 F. Supp. 1031 (N.D.Ill.1970); Gerstle v. Gamble-Skogmo, Inc., supra; Norte & Co. v. Huffines, 304 F.Supp. 1096 (S.D. N.Y.1968) aff'd. in pertinent part 416 F.2d 1189 (2nd Cir. 1969) cert. denied, 397 U.S. 989, 90 S.Ct. 1121, 25 L.Ed.2d 396 (1970); and Richland v. Crandall, 262 F.Supp. 538 (S.D.N.Y.1967).[15] The defendants have argued that in each of these cases the reference to the negligence standard was dictum since the courts ultimately found scienter or intent to defraud or held for the defendants, and therefore, they maintain that none of the cases is authority for a negligence standard. Absent any direct authority on the issue, the Court is justified in relying on such dicta especially when it appears to be sound and logical.

In Gerstle v. Gamble-Skogmo, Inc., supra, the Court expressly distinguished Rule 10b–5 and 14a–9:

"However, the basis for incorporating scienter into a Rule 10b–5 action does not exist in a Rule 14a–9 suit. . . . A literal reading of Section 14(a) and Rule 14a–9 fails to reveal any requirement for scienter. Negligence alone either in making a misrepresentation or in failing to disclose a material fact in connection with proxy solicitation is sufficient to warrant recovery." 298 F.Supp. at 97.

Subsequently, while precluding the defendant's efforts to interpose the defense of innocent conduct, the Court clearly rejects the scienter requirement and reiterates the negligence standard. Id. at 101. To categorize these statements as dicta does not detract from their persuasiveness.[16]

In addition to these opinions, several other factors support the conclusion that the appropriate standard is one of negligence. First, the language of § 14(a) and Rule 14a–9 contains no suggestion of a scienter requirement and merely establishes a quality standard for proxy materials. Second, the Supreme Court has stated and reiterated the importance of the proxy provisions and the importance of informed corporate suffrage. See J. I. Case Co. v. Borak, supra, and Mills v. Electric Auto-Lite Co., supra. The language of these cases emphasizes the broad remedial purpose of the statute and implies the imposition of a high standard of care on individuals within its coverage. Third, unlike §§ 10(b) and 18 which encompass activity in numerous and diverse areas of securities markets and corporate management, § 14(a) is specifically limited to materials utilized in proxy solicitations. Given the importance of corporate suffrage, the necessity for adequately informed shareholders, and the limited scope of

under § 14 would not affect the scope of § 10(b) and Rule 10b–5. The two sections of the Act apply to different sets of situations. Section 10(b) applies to all proscribed conduct in connection with a purchase or sale of any security; § 14 applies to all proxy solicitations, whether or not in connection with a purchase or sale. The fact that there may well be some overlap is neither unusual nor unfortunate." 393 U.S. at 468, 89 S.Ct. at 572.

15. In the Berman v. Thomson case, the court rejected a similar effort by the de-

fendants to introduce the good faith defense, and indicated that liability could be established on a showing of negligence.

16. The defendants claim that the appropriate standard for § 14(a) cases is contained in Mader v. Armel, CCH Fed. Sec.Law Reptr. ¶ 93,027 (S.D.Ohio 1971), affirmed 461 F.2d 1123 (6th Cir. 1972), a case dealing with liability under § 10(b) and Rule 10b–5. However, the Mader case does not address itself to § 14(a) or the particular elements of proof under a § 14(a) cause of action.

the section, the additional burden of imposing a standard of reasonable care or due diligence as opposed to actual knowledge or gross negligence is easily defendable. This is especially true for the corporate directors in this case since they hold a position of fiduciary trust to the very persons to whom the proxy materials were issued and who are now seeking damages.

Finally, contrary to the defendants' protestations, the negligence standard does not impose upon directors the role of guarantors or insurers of the accuracy of proxy statements. Moreover, this decision contains no intimation that directors will be required to recalculate or reassemble financial or other reports absent some evident misstatement or irregularity which should be within the directors' knowledge and the exercise of reasonable care would necessitate either correcting or directing to the expert's attention. To be sure, a more rigorous standard of conduct is demanded than would be required pursuant to a scienter standard, however, some degree of culpability must be established to recover damages. This rewards the conscientious director by guarding against liability for the diligent, and simultaneously, increases the incentives to more rigorously police proxy materials thereby more effectively protecting the interests of securities investors. While the negligence standard does not make impermissible any reliance on expertise of legal or financial counsel in areas pertinent to their respective expertise, it does preclude directors from failing to read proxy statements to correct statements and facts which they knew or should have known were erroneous or misleading. Section 14(a) imposes liability on individuals soliciting proxies, and not on the attorneys or accountants preparing them. Thus, unless the responsibility for examining proxy statements is borne by the directors and others who are potentially liable for misstatements, § 14(a) will be rendered largely ineffectual whenever proxy materials are prepared by experts

or others not involved in the solicitation. The allocation of responsibility and liability under § 14(a) to those involved in solicitations necessarily involves a concurrent restriction of their opportunities to rely on the performance of individuals who are not liable under the section. While maintaining a prerequisite of some degree of culpability, the negligence standard imposes the burden of scrutiny on those designated by the 1934 Act to guarantee against materially false or misleading proxy materials.

It should be noted that the liability of any individual defendant is dependent upon *his* due diligence or exercise of reasonable care, and therefore, the negligence standard embodies a criterion which would permit consideration of the individual's particular position with the corporation and his relationship to the pertinent information held to be erroneously or incompletely stated in the proxy materials.

Having determined for the reasons stated above that individual liability for damages under § 14(a) may be predicated on negligence, the Court must reanalyze the contentions of Casey, Kroeger and Ludwig in light of this standard.

## CASEY, KROEGER and LUDWIG: THEIR CULPABILITY

Casey, et al. argue that the present record fails to support the entry of summary judgment against them under the scienter standard. In addition, they assert that the issue of their good faith reliance on the expertise of McLean and Reynolds legal counsel in the preparation of the proxy materials is a jury question. Under the negligence standard of § 14(a), these contentions are irrelevant.

The issue is whether the undisputed factual record mandates the conclusion that all three were negligent in their approval of the McLean proxy materials or participation in the McLean proxy solicitation. Prior to an examination of the specific facts applicable to these defendants, it is necessary to deal with one ad-

ditional issue raised by them. Although raised pursuant to their arguments regarding scienter, the claim is equally pertinent under the negligence standard. The defendants claim that under the scienter standard not only must the defendants be shown to know the statements were false and misleading, but also they must be shown to know that the statements were material. Presumably under the negligence standard, the test would be whether the defendants knew or ought to have known that the statements were false or misleading and that they were legally material.

The Court does not agree that, at least for affirmative false or misleading statements, the question of a defendant's knowledge regarding materiality is a factor in determining his liability. Proof of actual knowledge of materiality would be almost impossible absent some showing of the defendant's awareness of court rulings concerning equivalent or substantially similar misstatements. Moreover, ignorance of applicable legal standards is rarely an excuse for violations or a defense to liability. See Gerstle v. Gamble-Skogmo, Inc., supra 298 F.Supp. at 101. Further, it is unclear what possible reason could justify exonerating a defendant from liability for using proxy materials containing material misstatements he knew or ought to have known were affirmatively false or misleading. The defendants can hardly argue he should avoid liability because although he solicited through proxy materials he knew or through the exercise of reasonable care should have known were false or misleading, he did not know or ought not to have known that the misleading statement would meet § 14(a)'s legal standard of materiality.

The defendants' argument concerning materiality is considerably more persuasive regarding liability for certain types of omissions. Omissions which make statements contained in the proxy materials misleading are not dissimilar from affirmative false or misleading statements. In such instances,

the proxy materials are sufficient to direct the defendant's attention to the pertinent information, and put the defendant on notice of the necessity to include those omitted facts which he knew or should have known. In such a case, the director's knowledge of the materiality of the misleading statements or omission is irrelevant and the defendants' negligence in not insisting that the omitted information be included to eliminate the misleading nature of the proxy disclosure should be sufficient to establish liability.

However, the Court is concerned about the appropriate degree of culpability for material omissions about which the proxy materials are completely silent and the noninclusion of which does not render misleading an affirmative statement made in the proxy materials. The Court perceives some problems in holding an individual liable for such an omission absent some evidence showing he knew or ought to have known of its probable importance to a shareholder's decision regarding the questions presented in the proxy questions. Since omitted information could arise from the entire spectrum of corporate activity and a myriad of facts, there are strong reasons supporting the position that a director should not be liable unless the misleading or false statement appears in the proxy materials, or there is some showing that he ought to have known of its importance and the need for its inclusion in the proxy materials. The materiality standard may be an adequate demarcation of those facts of sufficient importance that an individual defendant ought to insure their inclusion in the proxy materials. However, the Court is of the opinion that this additional element of proof regarding the defendant's knowledge of the importance of this type of omission will establish the appropriate degree of culpability with minimal adverse impact on the protections afforded to investors.

Whatever the appropriate standard for the latter form of omission, three of the four statements which the

Court determined to be materially false or misleading cannot be classified as that form of omission.[17] The statement concerning the favored defendants' agreement to vote for the merger was false, the omission of Mr. McLean's dual and conflicting role in the negotiations with Reynolds made the statement that the favored defendants had negotiated the sale of their stock to Reynolds misleading, and the omission of the conflict of interest of Casey, Ludwig and Kroeger made the statements regarding the Board of Directors' recommendations misleading. There is no dispute on the present record that Casey, Kroeger and Ludwig knew that (a) there was no agreement to vote for the merger and (b) that McLean had negotiated on behalf of both classes of sellers of McLean stock. There is also ample evidence indicating they knew or should have known there was a conflict of interest.

All three men have categorically denied that they or their respective companies[18] entered into any voting agreements, and the Court so determined in a prior opinion. 331 F.Supp. at 987–998. However, all three individual defendants seek to avoid liability through various arguments directed to the time sequence of the drafting and approval of the proxy materials and their specific awareness of what the proxy materials actually stated at various time periods.

An examination of these arguments insofar as they deal with the voting agreement statement not only shows their inadequacy, but also demonstrates certain of the most obvious infirmities of the scienter standard. Kroeger and Ludwig present the following position in support of their contention that the en-

try of summary judgment against them is improper on the present record. First, they approved the proxy draft on March 10th prior to the execution of the agreements to sell their company's shares to Reynolds and at that time might have anticipated that these agreements would include agreements to vote in favor of the merger.[19] Second, on March 25th when the sales agreements were signed and did not include an agreement to vote, they argue that it was reasonable for them to expect McLean's expert legal counsel to amend the proxy statement to comport with the actual agreements. Third, they assert that nothing in the record indicates that they ever read the proxy materials after they were disseminated in final form and thereby ascertained that the necessary changes had not been made. In essence, these defendants argue that they cannot be held liable for a materially false proxy statement which they utilized in the solicitation of proxies because (a) they might have relied on others to correct a statement they knew was false and (b) they might not have read the proxy statement. These contentions are without merit. Since § 14(a) imposes liability for the false and misleading McLean proxy materials on the solicitors, the Court cannot accept the contention that these defendant solicitors could avoid liability by relying on McLean counsel to rectify errors in the proxy materials. While it was entirely possible that the McLean lawyers might have remedied the misstatement regarding the agreement to vote, this Court is of the opinion that § 14(a) places a burden on these defendants to at a minimum bring such discrepancies to the lawyers' attention.

17. For the Court's discussion concerning the material misstatements, see 331 F. Supp. 981, 986–998 (D.Del.1971).

18. Kroeger was a director and chairman of the board of American Hawaiian; Ludwig was sole owner of National Bulk which owned 90% of American Hawaiian through a subsidiary; and Casey was senior vice president of Litton.

19. Since this is a summary judgment motion, the defendants merely raise possible factual circumstances which they contend preclude entry of judgment. They do not claim that Ludwig and Kroeger were not aware of the absence of any intention to agree to vote for the stock.

■ Rule 14a–9 specifically requires that solicitation material which has become false or misleading must be corrected by subsequent materials. Thus, assuming that the McLean proxy materials were accurate when initially approved, the proxy materials should have been amended to reflect subsequent occurrences or changes which rendered the initial disclosure false or misleading. Insofar as they knew or ought to have known that facts originally disclosed subsequently became inaccurate, the directors were under a continuing obligation to make certain that the proxy materials were amended and remained complete and accurate.[20]

The second contention that a director may escape liability for a materially false proxy statement because he lacked scienter or knowledge of its falsity by reason of his failure to read the statement is almost too disingenuous to believe. To exonerate a director for his failure to peruse the very materials the accuracy of which is his legal responsibility would effectively emasculate the proxy provisions. This is especially true in this instance when a director is attempting to rely on the expertise of persons themselves not liable under § 14(a). Clearly had these defendants read the proxy statement after it was issued on April 10th, they would have ascertained its inaccuracy. Rule 14a–9 would have mandated the issuance of information correcting the misstatement. The Court

cannot perceive a single justification in the Securities Acts generally or § 14(a) specifically which supports the directors' argument, nor comprehend any reason which would excuse a director from reading the proxy materials to satisfy himself that as best he knows or can reasonably ascertain, the materials are accurate and complete. The defendants' alleged lack of knowledge predicated upon their failure to read the very proxy materials which they had a continuing obligation to keep accurate and complete is no bar to liability.

Casey's argument concerning his lack of knowledge by reason of the absence of any proof that he read the proxy materials as ultimately issued is no more persuasive and is susceptible to the same reasoning elaborated regarding Ludwig's and Kroeger's defenses.

All three defendants knew that there was no agreement to vote for the merger and would have known that the April 10th proxy materials were false had they read them. The Court is of the opinion that under these facts, Casey, Kroeger and Ludwig are liable for the materially false and misleading McLean proxy statement as a matter of law. In light of this conclusion, the Court need not discuss in detail the defendants' contentions concerning the remaining three misstatements and omissions. Had they read the April 10th proxy materials, the defendants would have known or ought to have known that the omission of any

---

20. The Court does not reach the question of whether a director would be liable if after observing what he believed to be a misleading or omitted fact, he received and relied on assurances from counsel that such material was unnecessary or superfluous. Obviously, the negligence standard embodies these sort of considerations.

However, the present record indicates that no such inquiries were made. The following excerpt from Ludwig's deposition typifies these defendants' review of the proxy materials:

"Q. Did you read it at the time it was issued?
A. Yes, I scanned it.
Q. Did you read it in detail _ _ _

A. Just scanned it.
Q. In a cursory fashion?
A. Well, scanned it. There is a lot of detail to it.
Q. Did you scan it to see whether there were any serious omissions in it that should have been remedied?
A. We had people that were capable of reading it word by word.
Q. Do you remember whether there was any mention in that of the contractional veto power?
A. I never had anyone working for me, associated with me in any way, that raised any questions to the wording of it, so I assumed it was satisfactory to our people." (Tr. 38)

reference to the aforementioned two conflicts of interest made certain statements misleading. Under the reasoning detailed above regarding the liability for the misstatement about the agreement to vote, the defendants are also liable for their negligence in failing to remedy these two material omissions.

For the reasons stated above, the Court holds that the negligence standard is the appropriate standard of culpability to establish individual liability for monetary damages under § 14(a), and that this standard will be applied for a resolution of the liability of all remaining individual defendants.

Further, the Court denies the defendants' motions to vacate and reopen the Court's earlier decision on the question of the liability of Casey, Kroeger and Ludwig.

Submit order in accordance herewith.